## UNITED STATES *v.* MIDSTATE HORTICULTURAL CO. ET AL.*

No. 286. Argued, January 13, 1939.—Decided January 30, 1939.

---

* Together with No. 287, *United States* v. *Pennsylvania Railroad Co.*, also on appeal from the District Court of the United States for the Eastern District of Pennsylvania.

*Mr. Wendell Berge,* with whom *Solicitor General Jackson, Assistant Attorney General Arnold,* and *Messrs. N. A. Townsend, Elmer B. Collins, Frank Coleman,* and *Hugh B. Cox* were on the briefs, for the United States.

*Mr. Francis Biddle,* with whom *Messrs. Robert V. Massey, Jr., Frederic D. McKenney, Charles Myers,* and *John Dickinson* were on the brief, for appellee in No. 287.

*Messrs. Henry Silverman* and *Samuel L. Einhorn* submitted for appellees in No. 286.

Mr. Justice Black delivered the opinion of the Court.

These two appeals present for review a single question. As stated by appellant the sole question in each appeal is "whether or not the indictment charges the commission of an offense against the United States in the Eastern District of Pennsylvania, as it must, if appellees are to be prosecuted therein. *Constitution, Article 3, Section 2, Clause 3; Amendment VI.*" [1]

---

[1] Article 3, § 2, Clause 3 of the Constitution provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by

The defendant in No. 287 was indicted in the Eastern District of Pennsylvania charged with making unlawful rebates on interstate shipments. Defendants in No. 286 were charged, by indictment in the same District, with receiving the unlawful rebates. The District Court sustained demurrers to both indictments. The Government appealed directly to this Court. Appellees moved here to dismiss the appeals on identical grounds. The motions to dismiss are denied in both cases.[2]

The record requires that we treat the indictments to which demurrers were sustained as charging that rebates or concessions were paid and received in New York in 1935 in connection with the transportation of goods in 1932 from California through the Eastern District of

---

Law have directed." Amendment 6 of the Constitution so far as pertinent provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, . . ."

[2] The first ground of the motions to dismiss is that appeal was not taken "within thirty days after the decision or judgment" as required by 18 U. S. C., § 682. The court below wrote an opinion in which it stated "the demurrers are sustained," and filed the opinion June 16, 1938. But in accordance with the court's practice, final order was not entered until July 2, 1938. In that order the court sustained the demurrers and ordered defendants discharged. The Government petitioned for appeal July 20, 1938, within eighteen days after the final order was entered, but more than thirty days after the written opinion had been filed. The appeals were from the judgments and orders of July 2, and not the previous written opinion. The second ground of the motions to dismiss is that the Government did not have a right of direct appeal to this Court granted by 18 U. S. C., § 682, which authorizes such an appeal where judgment sustaining a demurrer "is based upon the invalidity or construction of the statute upon which the indictment is founded." The statute under which the indictments were returned provides expressly for the jurisdiction over offenses created by it, and the record clearly discloses that the rulings on demurrers involved a construction of the statute.

Pennsylvania to New Jersey; that the full lawful rate in accordance with published tariffs was paid when the tansportation took place; and that prior to the time of the payment and receipt of the alleged rebates in New York in 1935 the carrier and shippers had neither agreed nor intended that any rebate or concession should. be made. The Government concedes that the jurisdictional provisions of the Elkins Act,[3] on which the prosecutions are based, require trial in the District in which a violation of the Act is committed, but contends that the record discloses violations actually committed in the Eastern District of Pennsylvania. This contention rests upon the argument that the Elkins Act aims primarily to prevent the result of obtaining transportation at less than the lawful rate; that payment and receipt of rebates in 1935 served to accomplish such forbidden results—namely, transportation in 1932 at less than the lawful rate; and, since the transportation in 1932 passed through the Eastern District of Pennsylvania, the offenses were committed and are punishable there.

The statute defines offenses under it as follows: ". . . it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or to solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate . . . commerce by any common carrier . . . whereby any such property shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier, . . ." As to venue the statute provides: "Every violation of this section shall be prosecuted in any court of the United States having jurisdiction of crimes within the district in which such violation was committed, or through which the transportation may have been conducted; and whenever the offense is be-

---

[3] 49 U. S. C., § 41(1), 34 Stat. 587.

gun in one jurisdiction and completed in another it may be dealt with, inquired of, tried, determined, and punished in either jurisdiction in the same manner as if the offense.had been actually and wholly committed therein."

We need not determine whether Congress intended—by providing for the trial of crimes "within the district . . . through which the transportation may have been conducted"—to confer jurisdiction in any District where-in a violation was not committed. The Government only insists that the indictments here disclose offenses committed in the Eastern District of Pennsylvania, and urges that the provision for trial in any District through which illegal transportation is conducted is without meaning unless applicable to these prosecutions.

But there are many offenses in the Act of which this provision is a part to which the provision is clearly applicable. An illustration is that provided in the case of *Armour Packing Co.* v. *United States,* 209 U. S. 56. There an unlawful concession was given in the State of Kansas before interstate shipment was made. Transportation passed through the State of Missouri. The recipient of the concession was tried in Missouri. It was decided that the transaction constituted a continuing offense beginning in Kansas, and that the defendant could be tried in any District through which the unlawful transportation took place. The Court said (at p. 76): "We think the doctrine [of continuing offenses] . . . applies in the present case, for transportation is an essential element of the offense, and, as we have said, transportation equally takes place over any and all of the traveled route, *and during transportation the crime is being constantly committed."* (Italics supplied.) The section of the Elkins Act under which the present indictments were drawn describes other offenses and, in addition, makes it a misdemeanor for a carrier to violate any of the numerous criminal provisions of the Interstate Commerce Act.

Congress evidently intended to make it clear that as to any of the many offenses in which "during transportation the crime is being constantly committed" prosecution could be had in any District through which the unlawful transportation moves.

We do not believe Congress intended that subsequent conduct or events should stamp criminality upon an act that was lawful, and wholly unrelated to any unlawful plan or purpose, when done. Here, the full lawful rate was paid for the transportation involved. The lawful transportation through the Eastern District of Pennsylvania was not infected by relation to any unlawful agreement, purpose or intent at the time it occurred. The record shows no offense that began in 1932 and continued until 1935. As was clearly set forth by the Circuit Court of Appeals in the *Armour Packing Co.* case: [4] "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each. . . . The transportation of the goods in this case into and through the Western district of Missouri, at the *illegal through rate,* was the continuing operation and effect in that district of its primary cause, the receipt of the concession and the delivery of the oil by the shipper to the carrier thereunder for transportation in foreign commerce, and even if the shipper's offense was complete in Kansas, it may have been committed in Missouri also, where its operation continued and took effect." (Italics supplied.)

The legal transportation of goods at a lawful rate through the Eastern District of Pennsylvania without intent, purpose, or agreement to commit any part of a crime

---

[4] 153 F. 1, 5, 6. Cf., *United States* v. *Lombardo,* 241 U. S. 73, 77.

did not give the District Court of the Eastern District of Pennsylvania jurisdiction to try these defendants under the Elkins Act. On this record no violation of the Elkins Act was begun, continued or brought about [5] in that District. The demurrers were properly sustained and the judgments are

*Affirmed.*

---

[5] Cf., *United States* v. *Holte,* 236 U. S. 140, 144.