**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cornelius MAXIM, Jr., also known as
Corkey, Defendant–Appellant.**

**No. 94–3654.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1995.

Decided May 19, 1995.

---

Bruce C. Houdek, Kansas City, MO, argued, for appellant.

Charles E. Ambrose, Asst. U.S. Atty., Kansas City, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Cornelius Maxim, Jr. was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (1988), and illegally possessing a machine gun, in violation of 18 U.S.C. § 922(o). Maxim now appeals the district court's[1] denial of his motion to suppress evidence seized in a search of his home, and the calculation of his criminal history category under § 4A1.1(c) and (d) of the United States Sentencing Guidelines. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988) and 18 U.S.C. § 3742 (1988). We affirm both the conviction and the sentence.

## I. BACKGROUND

Maxim is a convicted felon, having pleaded guilty on September 13, 1984, in the Circuit Court of Clay County, Missouri, to the felony charge of attempted stealing by deceit of property worth more than $150,000.00. On April 22, 1993, Maxim pleaded guilty in the Circuit Court of Jackson County, Missouri, to third degree misdemeanor assault of his ex-wife, Nanette Benanti, and was placed on two years probation.

On June 24, 1993, Harold Wactor, Special Agent for the Bureau of Alcohol, Tobacco and Firearms ("ATF"), interviewed Benanti, who was married to Maxim from May to

---

**1.** The Honorable Joseph E. Stevens, Jr., Chief Judge, United States District Court for the Western District of Missouri.

November 1990. Benanti informed Wactor that both before and during their marriage Maxim possessed numerous firearms, including a .357 Python revolver, a Browning semi-automatic pistol, an Uzi, a .223 M–15 rifle, a Mini–Mac automatic pistol, a Walther PPK 9mm pistol, and several "pineapple" style hand grenades. Benanti told Wactor that Maxim typically carried the Walther with him in a metal briefcase and stored the rest of the firearms in a safe located in the garage of his mother's residence. Benanti, who described Maxim as a survivalist, also stated that Maxim kept a large quantity of ammunition on hand in his bedroom apartment located in his mother's basement. On June 30, 1993, Wactor interviewed Vickie Wright, who had dated Maxim from December 1992 through March 1993. Wright confirmed the information supplied by Benanti and told Wactor that Maxim referred to his firearms as his "toys." Wright also stated that Maxim possessed several tear gas grenades, one of which she turned over to Wactor.

On July 1, 1993, Wactor appeared before Magistrate Judge John T. Maughmer and signed a sworn affidavit in support of an application for a search warrant seeking authority to search Maxim's residence for firearms and ammunition. Wactor supplemented the information supplied by Benanti and Wright with his own statement that, based on his experience as a law enforcement officer, survivalists and other firearm enthusiasts tended to keep their firearms for long periods of time. The warrant was issued July 1, 1993, and executed July 7, 1993. In Maxim's basement bedroom ATF agents found a Colt Python Revolver loaded with six rounds of armor-piercing ammunition, 900 rounds of 9mm ammunition, 400 rounds of other ammunition, and a photograph of Maxim firing an AR–15 rifle in fully-automatic mode. In a safe located in the garage, ATF agents found seven additional firearms, including a shotgun, an AR–15 assault rifle converted to fully automatic mode, an SM–10 "Mac 10" automatic pistol that operated in a fully automatic mode as a machine gun, additional ammunition, several hand grenades, and various personal papers bearing Maxim's name.

Maxim was charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of illegally possessing a machine gun, in violation of 18 U.S.C. § 922(o). Following the district court's denial of Maxim's motion to suppress the evidence seized in the search of his home, Maxim entered conditional pleas of guilty to both charges. Maxim's criminal history category under the United States Sentencing Guidelines ("Guidelines") was calculated at Category III. This determination was based upon the addition of one point pursuant to U.S.S.G. § 4A1.1(c) for Maxim's 1984 felony attempted stealing by deceit conviction, one point pursuant to U.S.S.G. § 4A1.1(c) for his 1993 third degree assault conviction, and two additional points pursuant to U.S.S.G. § 4A1.1(d) for committing the instant offenses while on probation for the 1993 assault conviction. Maxim was sentenced to 51 months imprisonment. Maxim appeals his conviction and his sentence.

## II. DISCUSSION

### A. Motion to Suppress

Maxim argues that the district court erred in denying his motion to suppress the evidence seized pursuant to the search warrant. He contends that the information contained in the affidavit was too stale to supply probable cause to search his home. The Government replies that the lapse of time between the observations of the witnesses and the issuance of the warrant is only one factor to be considered and that, under the totality of the circumstances, probable cause existed to issue the warrant.

"We review the district court's denial of the motion to suppress evidence for clear error." *United States v. Parker*, 32 F.3d 395, 398 (8th Cir.1994). We judge the sufficiency of the information supporting a search warrant under the "totality-of-the-circumstances analysis" set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge'

of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. at 2332. We do not review the determination of the magistrate de novo. "In reviewing the sufficiency of an affidavit supporting a search warrant, we accord great deference to the decision of the judicial officer who issued the warrant." *United States v. Day,* 949 F.2d 973, 977 (8th Cir.1991).

Maxim accurately points out that the information provided by Benanti in support of the affidavit was three years old, and that the information provided by Wright was at least four months old. We do not, however, view this delay factor and issue as dispositive. "A delay in executing a search warrant may make probable cause fatally stale. But the lapse of time is not always the controlling factor. Other factors must also be considered, including the nature of the criminal activity involved and the kind of property subject to the search." *United States v. Rugh,* 968 F.2d 750, 754 (8th Cir.1992). "There is no bright-line test for determining when information is stale." *United States v. Koelling,* 992 F.2d 817, 822 (8th Cir.1993). Probable cause "cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *Id.* (citations omitted).

■ Several factors in this case minimize the importance of the lapse in time between the observations supporting the affidavit and the issuance of the warrant. The nature of Maxim's criminal activity alone makes the date of Benanti's information less significant. 18 U.S.C. §§ 922(g) and (o) are both continuing offenses because "the federal gun control statute punishes the *possession* and not merely the *acquisition* of a firearm." *United States v. Waters,* 23 F.3d 29, 36 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 185, 130 L.Ed.2d 119 (1994); *United States v. Ellison,* 793 F.2d 942, 947 (8th Cir.), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986). As this Court observed in *United*

*States v. Jones,* 801 F.2d 304, 314 (8th Cir. 1986), "[t]he passage of time between the transactions on which a warrant is based and the ensuing search is less significant when the facts recited indicate activity of a continuous nature."

The nature of the evidence sought in this case also minimizes the importance of the time lapse. The affidavit was supported by Special Agent Wactor's statement that, based on his professional experience, survivalists and other firearm enthusiasts such as Maxim tended to hold onto their firearms for long periods of time—often as long as ten or twenty years. This Court has explicitly recognized this very principle in *Ellison,* 793 F.2d at 947 (continuous nature of illegal possession of firearms and tendency of survivalists/paramilitary groups to retain their weapons for a long period of time minimized lapse of time between information in the affidavit and execution of search warrant). Based on the continuing nature of Maxim's crimes and Special Agent Wactor's testimony, we cannot say that the information provided by Benanti was stale. *See also Rugh,* 968 F.2d at 754 (continuous nature of ongoing child pornography ring and tendency of pedophiles to retain child pornography for a long period of time minimized lapse of time between information in the affidavit and execution of the search warrant).

■ The totality of the circumstances demonstrate that there were sufficient facts to establish an objectively reasonable belief that probable cause existed to search Maxim's home. In this case, the four-year-old information supplied by Benanti was augmented and confirmed by Wright's testimony that as recently as March of 1993, four months prior to the execution of the warrant, Maxim continued to carry the Walther in his briefcase and store the additional firearms in the safe. As we observed in *Day,* 949 F.2d at 978, "It is well-settled that information about criminal activity at an earlier, unspecified time may combine with factually connected, recent, time-specific information to provide a substantial basis for the conclusion that the criminal activity described in an affidavit is sufficiently close in time to the search warrant application." In this case,

Benanti and Wright's testimony that Maxim continued to illegally possess these firearms from May 1990 through March of 1993 make it all the more likely that he continued to possess them another four months through July 1993 when the warrant was issued and executed. Based on the basis of Benanti and Wright's knowledge, the specificity and consistency of their testimony, the ongoing nature of Maxim's offense, and the nature of the evidence sought, we believe that, under the totality of the circumstances, sufficient probable cause existed to issue the search warrant.

### B. U.S.S.G. §§ 4A1.1(c) and (d)

U.S.S.G. § 4A1.1(c) provides that in the calculation of criminal history points, the sentencing court shall add one point for each prior sentence not resulting in a sentence of imprisonment. U.S.S.G. § 4A1.1(d) similarly directs the sentencing court to "[a]dd two points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Maxim argues that the district court erred in assessing him a one-point increase under U.S.S.G. § 4A1.1(c) and a two-point increase under U.S.S.G. § 4A1.1(d) because he committed the instant offenses prior to his 1993 assault conviction its accompanying probation. "Because this argument attacks the district court's construction of these Guidelines, our standard of review is de novo." *United States v. Rayner*, 2 F.3d 286, 287 (8th Cir.1993).

As previously observed, 18 U.S.C. §§ 922(g) and (o) are continuing offenses. Maxim was convicted of a felony in 1984 and claims to have possessed the firearms in question for twelve to fifteen years. As such, he argues that because he had completed every act necessary to commit the instant continuing firearm offenses prior to 1993, he therefore committed the instant offenses before his 1993 assault conviction and its resultant probation. As such, Maxim contends that the district court erroneously assessed him an extra criminal history point under U.S.S.G. § 4A1.1(c) for his "prior" 1993 assault conviction. Maxim further argues that

the district court similarly erred in assessing him an added two criminal history points under U.S.S.G. § 4A1.1(d) because he had already committed the instant offenses prior to being placed on probation in 1993. In essence, Maxim advances the argument that the sentencing court may consider only acts occurring prior to, but not during, a defendant's commission of a continuing offense for purposes of calculating that defendant's criminal history.

■ We reject Maxim's argument. We conclude instead that the sentencing court must consider the entire period during which continuing offense occurred for purposes of applying U.S.S.G. §§ 4A1.1(c) and (d). We believe this approach is consistent with both Congress's decision to criminalize the unlawful possession of firearms as a continuing offense and our prior decisions holding that a continuing offense, by its very nature, does not terminate until the date of the indictment or the voluntary termination of the illegal activity. *See United States v. Reetz*, 18 F.3d 595, 598, (8th Cir.1994). *See also United States v. Kayfez*, 957 F.2d 677, 678 (9th Cir. 1992) (considering the entire period of defendant's continuing offense of unlawful possession of counterfeit notes for purposes of applying U.S.S.G. §§ 4A1.1(d) and (e)). We also believe this approach to be consistent with U.S.S.G. § 4A1.1's avowed purposes of accurately reflecting the defendant's criminal history and adding a measure of recency to the sentencing calculus. U.S.S.G. § 4A1.1, comment. (backg'd.).

Applying this approach to the instant case, we conclude that the district court applied the Guidelines correctly. Maxim admitted to continually possessing the firearms in question for twelve to fifteen years, which supports his claim that he had completed every act necessary to commit the instant offenses prior to his 1993 conviction for first-degree assault and its resultant probation. The record is equally clear, however, that Maxim continued to commit these offenses following that conviction and during its accompanying probation by continuing to unlawfully possess the firearms. If Maxim had begun and ended his unlawful acts of possession prior to his 1993 assault conviction and its accompanying

probation, the result could be different. But that is not the case before us. The district court properly considered the entire period during which Maxim unlawfully possessed the firearms. As such, the district court accurately assessed Maxim an additional criminal history point under U.S.S.G. § 4A1.1(c) for continuing to commit the instant offenses after his prior 1993 assault conviction. The district court's assessment of an additional two criminal history points pursuant to U.S.S.G. § 4A1.1(d) was also correct because Maxim continued to commit the instant offenses while on probation.

## III. CONCLUSION

For the reasons stated above, we affirm Maxim's conviction and sentence.