**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-20189
(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZEFERINO SANTANA-CASTELLANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

January 25, 1996

Before JOLLY, JONES, and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Santana-Castellano (Santana) pled guilty to being found unlawfully in the United States on June 7, 1994, after having been deported, in violation of 8 U.S.C. §1326. Because he had previously been convicted of committing an aggravated felony, he was sentenced to 62 months confinement and to a three-year term of supervised release, sentence to be served consecutive to the sentence he was already serving at the Texas Department of Criminal Justice for injury to a child. He appeals his sentence, arguing that the district court erred in applying sentencing guidelines §§4A1.1(d) and 5G1.3(a) which added two criminal history points and imposed a consecutive sentence. For the following reasons, we AFFIRM.

1

**FACTS**

In June of 1980, Santana was convicted of importing approximately 70 pounds of marijuana into the United States, an aggravated felony as defined by the Immigration Act. 8 U.S.C. §1101 (43)(B). He was deported in 1987. In August of 1992, he was again deported after illegally reentering. Then, in April of the following year, he was arrested in the United States for the offense of injury to a child. He was convicted of that offense in Texas state court, and sentenced to five years confinement at TDCJ. While serving his state sentence at TDCJ, Santana was interviewed by an agent of the Immigration and Naturalization Service ("INS") who was looking for inmates who were "suspected aliens." Santana admitted that he had previously been deported. The INS agent verified that Santana had been deported after being convicted of a federal drug offense and charged him with violation of 8 U.S.C. §1326 which dictates that it is a crime for an alien who has been arrested and deported to be "at any time found in" the United States.[1]

The presentence report (PSR) recommended a total offense level of 21 and a criminal history category of IV, resulting in a guideline range of 52 to 71 months. The criminal history category was based on eight criminal history points, including two points under U.S.S.G. §4A1.1(d) for having committed the offense of reentering while under a state sentence of imprisonment. The PSR also

---

[1](a) Subject to subsection (b), any alien who --
    (1) has been arrested and deported or excluded and deported, and thereafter
    (2) enters, attempts to enter, *or is at any time found in*, the United States, unless
    (A) prior to his reembarkation at a place outside the United States or his
    application for admission from foreign contiguous territory, the Attorney General
has expressly consented to such alien's reapplying for admission; . . .
Shall be fined under title 18, United States Code, or imprisoned not more than 2 years or both.
(b) not withstanding subsection (a), in the case of any alien described in such subsection --
    (1) whose deportation was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under title 18, United States Code, imprisoned not more than 10 years, or both; or
    (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both. (emphasis added)

recommended that Santana's federal sentence be imposed pursuant to §5G1.3(c), which dictates that a consecutive sentence be imposed to the extent necessary to achieve a reasonable incremental punishment.

At sentencing, Santana argued that the two-point criminal history enhancement under §4A1.1(d) was inapplicable because he was not under a state sentence when he illegally reentered the United States.[2] The district court found that §4A1.1(d) applied because Santana was "found" unlawfully in the United States while he was serving a state prison sentence.

The district court also ordered that Santana's federal sentence would be consecutive to his state sentence pursuant to §5G1.3(a). U.S.S.G.§5G1.3(a) requires a consecutive sentence, while §5G1.3(c) allows the judge some discretion in determining how much of a sentence shall be consecutive.[3] Santana filed a timely notice of appeal, claiming that the two point criminal history enhancement should not have been applied because he committed the criminal reentry prior to his prosecution and sentence for injury to a child, not during his incarceration in state prison. He also argues that §5G1.3(a) is inapplicable because he was not serving a term of imprisonment when he crossed the border.

## DISCUSSION

A sentence will be upheld on review unless it was "imposed in violation of law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable

---

[2]U.S.S.G. §4A1.1(d) provides for a two point enhancement of the criminal history category if the defendant committed the instant offense while under any criminal justice sentence.

[3]U.S.S.G. §5G1.3(a) provides that "if the instant offense was committed while the defendant was serving a term of imprisonment ... the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment."
Subsection (b) provides that "if subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment."
Subsection (c) provides that "in any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense."

sentencing guideline and is unreasonable." United States v. Garcia, 962 F.2d 479, 480-81 (5th Cir.), cert. denied, __U.S. __, 113 S. Ct. 293, 121 L.Ed. 2d 217 (1992). Applications of the guidelines are reviewed de novo. United States v. Bryant, 991 F.2d 171, 177 (5th Cir. 1993).

In order to decide whether §5G1.3(a) and 4A1.1(d) were correctly applied, we must first consider when exactly Santana committed the §1326 offense of "being found in" the United States: when he was found in TDCJ or when he entered illegally. Santana argues that the district court erred in finding that his offense of illegal reentry was an offense which continued until he was found by INS agents.

The clear language in 8 U.S.C. §1326(a)(2) provides three separate occasions upon which a deported alien may commit the offense: 1) when he illegally enters the United States: 2) when he attempts to illegally enter the United States; or 3) when he is at any time found in the United States. United States v. Gonzales, 988 F.2d 16, 18 (5th Cir.), cert. denied, __ U.S. __, 114 S. Ct. 170, 126 L.Ed. 2d 129 (1993). This court has held that the guidelines in effect at the time the deported alien is found are the appropriate source for determining a sentence because of the "found in" language in §1326(a)(2). Gonzales, 988 F.2d at 18, accord United States v. Rodriguez, 26 F.3d 4, 8 (1st Cir. 1994).

Likewise, the five year statute of limitations under §1326 begins to run at the time the alien is "found," barring circumstances that suggest that the INS should have known of his presence earlier, such as when he reentered the United States through an official border checkpoint in the good faith belief that his entry was legal. United States v. Gomez 38 F.3d 1031, 1035 (8th Cir., 1994); accord United States v. DiSantillo, 615 F.2d 128, 132 (3d Cir. 1980).

The purpose of the "found in" provision is to provide punishment for an alien who, following his deportation ... and without the permission of the Attorney General... having reentered remains illegally in this country until his presence is discovered. United States v. Whittaker, 999 F.2d 38, 41 (2d Cir. 1993). This provision prohibits deported aliens, who have illegally reentered the United States, from remaining in the country. United States v. Ortiz-Villegas, 49 F.3d 1435, 1436 (9th

4

Cir.), cert. denied, __ U.S. __, 116 S. Ct. 134 (1995).

Santana argues that the district court adopted a "hyperliteral interpretation" of the 'found in' language when it held that he continued to commit the crime of illegal reentry after he was arrested and imprisoned for the state offense, and that it erred in finding that his offense of illegal reentry was an offense which continued until he was found by INS agents, citing DiSantillo for the premise that a §1326 violation is not a "continuing" offense. After all, his act of entering the United States occurred at a certain point in time; it did not continue as would a convicted felon's possession of a firearm. See United States v. Maxim, 55 F.3d 394, 397 (8th Cir.), cert. denied, __U.S. __, 116 S. Ct. 265 (1995). Moreover, he certainly could not leave the United States while incarcerated in the TDCJ.

Nevertheless, Santana's argument is unavailing. "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." United States v. Midstate Horticultural Co., 306 U.S. 161, 166, 59 S. Ct. 412, 414, 83 L. Ed. 563 (1939)(citations omitted). In line with this definition, both illegal possession of firearms and ongoing child pornography have been found to be continuing offenses. Maxim, 55 F.3d at 397.

Santana attempts to distinguish his situation, arguing that in DiSantillo, the Third Circuit applied continuing offense analysis to §1326 and held that being "found in" the United States is not a continuing offense. The facts of that case are easily distinguishable from the situation in the case at bar. DiSantillo entered the country at a United States immigration service port of entry with a visa issued by the Department of State, and was unaware that his entry was illegal. DiSantillo, 615 F.2d at 132-33. The Third Circuit used continuing offense analysis to determine whether the "found in" language was intended to toll the five year statute of limitations on §1326, and concluded that, in DiSantillo's circumstances, it did not. However, in instances where the deported alien surreptitiously enters the country, and is later discovered by the INS, the statute of limitations does not begin to run until his presence as well as the illegal status of that presence is discovered by the INS. United States

5

v. Gomez, 38 F.3d 1031, 1036 (8th Cir. 1994); DiSantillo, 615 F.2d at 132 (dicta).

Adopting the reasoning used in Gomez, we hold that a previously deported alien is "found in" the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities. Gomez, 38 F.3d at 1037.

Where a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is "found" is a continuing offense because it is "an unlawful act set on foot by a single impulse and operated by an unintermittent force," to use the Supreme Court's language. See Midstate Horticultural Co., 306 U.S. at 166. That "force" is the alien's knowledge that his entry is illegal due to his prior deportation, and his apparent intent to remain in the United States. This analysis gives common sense effect to the "found in" language of §1326, which is obviously intended to extend the definition of the offense to include those situations where the alien is the only one who knows the precise date of his surreptitious entry and knows that he has violated the law in reentering the country after he has been arrested and deported. See Gomez, 38 F.3d at 1035. Additionally, this interpretation gives effect to the entire statutory phrase at issue, rather than just two words, because §1326 is to include "any alien who . . . is *at any time* found in" the United States.

To apply this reasoning to the case at bar, Santana illegally reentered the United States in 1992. His physical presence was not noted by immigration authorities at the time of his reentry, nor could awareness of his presence be reasonably attributed to them until his interview with the INS agent in TDCJ. Thus, he was "found in" the United States when the INS agent discovered his presence and Santana admitted to him that he had previously been deported. The date of his surreptitious entry is irrelevant for sentencing purposes, only the fact that he was "found" by immigration authorities while serving a sentence in the TDCJ. This result is in accord with the Nineth Circuit's holding that §1326 applied to a deported alien whose presence in a California state prison

6

was discovered by an INS agent. United States v. Ortiz-Villegas, 49 F.3d 1435 (9th Cir. 1995).

Section 4 A1.1(d) provides that two points should be added to the criminal history category "if the defendant committed the instant offense while under any criminal justice system sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Section 4A1.1(d) applies "if the defendant committed any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence." §4A1.1, comment. (n.4). Thus, the §4A1.1(d) two-point enhancement for purposes of criminal history calculation is appropriate where a continuing offense begins before the offense for which the defendant is under a criminal justice sentence because "[a] continuing offense, by its very nature, does not terminate until the date of the indictment or the voluntary termination of the illegal activity." United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995).

Santana pleaded guilty to the charge that "on or about June 7, 1994 . . . [he], an alien previously arrested and deported, was found unlawfully present in the United States" in violation of 8 U.S.C. §1326. On that date, Santana was imprisoned in the TDCJ-ID. Because a "found in" violation is a continuing violation until the date the alien is discovered by immigration authorities, Santana committed all or part of that violation on the date he was discovered while imprisoned on the state offense. Therefore, the district court did not err in applying §4A1.1(d).

Santana further argues that §5G1.3(a) is inapplicable because he was not serving a term of imprisonment when he crossed the border. The sentencing court has discretion to impose a concurrent or consecutive sentence on a defendant who is already subject to an undischarged term of imprisonment. 18 U.S.C. §3584(a). United States v. Hernandez, 64 F.3d at 179, 182 (5th Cir. 1995). In exercising that discretion, the court must consider the applicable guidelines and policy statements in effect at the time of sentencing. 18 U.S.C. § 3553(a); Hernandez, 64 F.3d at 182. Section § 5G1.3 "provides direction to the court when a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment. See 18 U.S.C. § 3584." U.S.S.G. §5G1.3, comment (backg'd). Because Santana's violation of §1326 continued until he was

7

"found in" TDCJ, the imposition of a consecutive sentence was not in error, whether that consecutive sentence was imposed under § 5G1.3(a) or under (c).

Thus, because Santana, for the purposes of sentencing, was "found in" the United States while under sentencing for committing another offense, the U.S.S.G. §4A1.1(d) enhancement as well as the consecutive sentence pursuant to U.S.S.G. §5G1.3(a) are AFFIRMED.