# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2013

No. 12-10669

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LORENZO FLORES-ALEJO,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CR-190-1

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Lorenzo Flores-Alejo—a previously deported alien—was found by immigration officials in a Texas jail following his conviction and sentencing for a state-law offense. He pled guilty to illegal reentry under 8 U.S.C. § 1326. At sentencing, the district court increased his Guidelines criminal history score because he was under a criminal justice sentence when immigration officials found him. On appeal, he argues that applying the criminal history adjustment violated the Eighth Amendment prohibition on cruel and

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

unusual punishment and the Fifth Amendment due process guarantee. For the reasons that follow, we AFFIRM the district court's judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 4, 2010, police in Arlington, Texas, arrested Defendant-Appellant Lorenzo Flores-Alejo for driving while intoxicated with a child passenger. Tex. Penal Code Ann. § 49.045. Flores was convicted and sentenced to three years' imprisonment. While he was awaiting transfer to state prison to serve this sentence, agents of U.S. Immigration and Customs Enforcement (ICE) discovered him in Tarrant County Jail. Immigration records showed that Flores—a Mexican national—had illegally entered the United States three times between 1993 and 2000, and had been ordered removed or granted voluntary return each time. He reentered this country (after having been ordered removed) two months before his DWI arrest.

Flores was charged in a single count under the part of 8 U.S.C. § 1326(a) that provides punishment for an alien who has been "found in" the United States after having been deported. The government also alleged that Flores was subject to an increased statutory maximum punishment because he had committed certain crimes before his previous deportation. 8 U.S.C. § 1326(b)(1), (2). Flores pled guilty without a plea agreement. In the "Factual Resume" underlying his plea, he stipulated that he had been discovered in Tarrant County Jail.

The probation officer recommended increasing Flores's criminal history score by two points under the Sentencing Guidelines because he had been found in this country "while under [a] criminal justice sentence"—namely, the sentence imposed for his DWI conviction. U.S.S.G. § 4A1.1(d) (2011). Flores objected on two grounds. First, he argued that § 4A1.1(d) does not apply when an illegal-reentry defendant is found by immigration officials while he is in state custody. This argument was foreclosed by our decision in *United States v. Santana-Castellano,* 74 F.3d 593 (5th Cir. 1996). He also argued that applying § 4A1.1(d)

would violate the Fifth and Eighth Amendments by increasing his punishment based on an involuntary act that bore no relation to his culpability—remaining in the United States due to his incarceration.

The district court overruled Flores's objections. The two-point § 4A1.1(d) adjustment increased his criminal history score to thirteen, which raised his Criminal History Category from V to VI. Absent the adjustment, his advisory sentencing range would have been 70 to 87 months' imprisonment instead of 77 to 96 months. U.S.S.G. ch. 5 pt. A. The district court sentenced him to 96 months' imprisonment, explicitly limiting the sentence to the top of the Guidelines range. The court stated, however, that "a sentence above that would be entirely appropriate under the circumstances."

Flores timely appealed.

## II. STATUTORY AND GUIDELINES PROVISIONS

### A.     Section 1326

"The clear language in 8 U.S.C. § 1326(a)(2) provides three separate occasions upon which a deported alien may commit [an illegal-reentry] offense: 1) when he illegally enters the United States; 2) when he attempts to illegally enter the United States; or 3) when he is at any time found in the United States." *Santana-Castellano*, 74 F.3d at 597; *accord United States v. Mendez-Cruz*, 329 F.3d 885, 888–89 (D.C. Cir. 2003).

Flores was charged under the "found in" prong, which "prohibits deported aliens, who have illegally reentered the United States, from remaining in the country." *Santana-Castellano*, 74 F.3d at 597. In *Santana-Castellano*, we held that a person who violates the "found in" prong commits a continuing offense that begins when he enters this country:

> Where a deported alien enters the United States and remains here
> with the knowledge that his entry is illegal, his remaining here until
> he is "found" is a continuing offense because it is "an unlawful act
> set on foot by a single impulse and operated by an unintermittent

> force," to use the Supreme Court's language. *See United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939). That "force" is the alien's knowledge that his entry is illegal due to his prior deportation, and his apparent intent to remain in the United States.

*Id.* at 598 (citation altered). We further held that this continuing offense ends only when immigration officials discover the violator's unlawful presence. *Id.* A "found in" offense thus is initiated by, but separate from, the act of reentering. *See United States v. Tovias-Marroquin*, 218 F.3d 455, 457 (5th Cir. 2000) ("A conviction under § 1326 for being 'found in' the United States necessarily requires that a defendant commit an act: he must re-enter the United States without permission . . . after being deported." (citation and internal quotation marks omitted)); *accord United States v. Castrillon-Gonzalez*, 77 F.3d 403, 406 (11th Cir. 1996). This construction prevents a deported alien from avoiding liability under § 1326 simply by eluding immigration authorities until the limitations period has run as to the act of reentering. *Santana-Castellano*, 74 F.3d at 598.

## B.    Section 4A1.1(d)

Section 4A1.1(d) provides: "Add 2 [criminal history] points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." This provision applies "if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence." U.S.S.G. § 4A1.1 cmt. n.4. In *Santana-Castellano*, we affirmed § 4A1.1(d)'s application to a deported alien who had been found while serving a state prison sentence. 74 F.3d at 598. We reasoned that because his § 1326 offense continued until immigration officials found him, part of it had occurred while he was under a criminal justice sentence. *Id.*

No. 12-10669

## III. DISCUSSION

Flores argues that applying § 4A1.1(d) to his Guidelines calculation violated the Eighth and Fifth Amendments. We review a properly preserved constitutional challenge de novo. *See United States v. Newson*, 515 F.3d 374, 376 (5th Cir. 2008).[1]

### A.     *Actus reus*

At the heart of Flores's appeal is his contention that the Constitution prohibits a defendant from being punished—or in his case, from being subjected to increased punishment—for an involuntary act. He relies on *Robinson v. California*, 370 U.S. 660, 660 n.1, 667 (1962), in which the Supreme Court reversed the petitioner's conviction under a statute that criminalized the status of "be[ing] addicted to the use of narcotics." Imprisonment for such an offense "inflicts a cruel and unusual punishment" because even if a violator became addicted to narcotics through prior, voluntary use, "proof of the actual use of narcotics" was not required to convict. *Id.* at 665, 667. Because the statute imposed criminal penalties for being afflicted with "an illness which may be contracted innocently or involuntarily," it could not withstand constitutional scrutiny.[2] *Id.* at 667.

---

[1] *Newson* concerned a separation-of-powers challenge to a legislatively amended Guidelines provision, and therefore is not strictly analogous to the instant matter. We have found no appellate decision that discusses the correct standard of review for an as-applied constitutional challenge to a Guidelines provision under an advisory sentencing regime. *See United States v. Booker*, 543 U.S. 220, 245–46 (2005); *cf. United States v. De Jongh*, 937 F.2d 1, 5–6 (1st Cir. 1991) (applying de novo review to a pre-*Booker* constitutional challenge). We will not attempt to discern the theoretical mechanics of such a challenge post-*Booker*, however, because the parties have not briefed this issue, the parties agree (albeit summarily) that de novo review applies, and Flores's challenge fails even under this standard.

[2] The *Robinson* Court did not hold that it was irrelevant whether the defendant had used narcotic drugs; it simply considered the case to be one in which the defendant had not "touched any narcotic drug within" California. *See* 370 U.S. at 667. The Court did so because the jury returned a general verdict that did not require it to find that Robinson had actually used drugs. *See id.* at 662–63, 665; *cf. Stromberg v. California*, 283 U.S. 359, 367–70 (1931). Accordingly, Flores is wrong to infer from *Robinson* that "what the defendant happens to have

No. 12-10669

*Robinson* subsequently has been interpreted to mean that, under the Eighth Amendment, "criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus*." *Powell v. Texas*, 392 U.S. 514, 533 (1968) (plurality opinion) (Marshall, J.). Extending this reasoning, Flores argues that applying § 4A1.1(d) because he remained in the United States while under a criminal justice sentence was impermissible because Texas officials actively prevented him from leaving this country and thereby ending his § 1326 offense. *See United States v. Ayala*, 35 F.3d 423, 425 (9th Cir. 1994) ("To avoid being 'found in' the United States, a deported alien can either not re-enter the United States or, if he has already re-entered the United States, he can leave.").

Flores misapprehends the nature of the "relevant conduct" that triggered § 4A1.1(d)'s application to his Guidelines calculation. U.S.S.G. § 4A1.1 cmt. n.4. Although some affirmative act is typically required for a criminal conviction, a *failure* to act in violation of a legal duty also can give rise to criminal liability. *See generally* Wayne R. LaFave, *Criminal Law* § 6.2 (5th ed. 2010). This concept is woefully familiar to the American taxpayer, who may be punished for willfully failing to file a return if required by law to do so. *See* 26 U.S.C. § 7203; *Cheek v. United States*, 498 U.S. 192, 201–04 (1991).

A § 1326 "found in" offense is no different. As we discussed in *Santana-Castellano*, 74 F.3d at 598, a "found in" violation occurs when a deported alien remains in the United States knowing that his continued presence is unlawful, and he is subsequently found by immigration officials. Stated differently, the deported alien's reentry immediately gives rise to a duty to leave this country; his apparently intentional failure to do so is unlawful. *Id.*; *see also Ayala*, 35

---

done in a particular case" is irrelevant. Our focus in this as-applied challenge is on his conduct—not the conduct of a hypothetical defendant.

F.3d at 425. Because an alien's prior deportation generally imparts to him the knowledge that reentering and staying would violate federal law, there will be precious few instances in which a violator will be unaware of his duty to leave this country after reentry. *See Santana-Castellano*, 74 F.3d at 598; *see also Lambert v. California*, 355 U.S. 225, 229 (1957) (holding, with respect to an ordinance requiring convicted felons present in Los Angeles to register with the police, that due process required "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply").

In keeping with the continuing nature of Flores's § 1326 offense, we must view as a whole the voluntary acts he committed while illegally remaining in this country (reentering this country and driving while intoxicated) and his purportedly involuntary act (failing to leave while in state custody). To be sure, Flores hardly could have satisfied his legal duty to leave this country when he was in the hands of law enforcement. *See* LaFave, *supra*, § 6.2(c) ("[O]ne cannot be criminally liable for failing to do an act that he is physically incapable of performing."). But neither could he have failed to recognize that committing a crime in this country would likely prolong his unlawful presence. In effect, Flores argues that he cannot be held responsible for § 4A1.1(d) purposes when his affirmative acts have forced him to commit an unlawful omission. This is akin to blaming gravity for one's fall after jumping off a bridge.

Our reasoning is neither novel nor surprising. In another, well-established context, a defendant can be held responsible for occurrences he did not directly cause: A conspirator is liable for co-conspirators' acts that advance the conspiracy's illicit objective, even if he did not specifically know that the co-conspirators would commit those acts. *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). This is because a conspirator, by agreeing to pursue a criminal objective, has helped to set in motion the events that led to the charged act. *See id.* at 647 ("The criminal intent to do the act is established by the

No. 12-10669

formation of the conspiracy. Each conspirator instigated the commission of the crime."). Similarly, a previously deported alien who reenters the United States and commits a crime undertakes the risk that law enforcement officials will prevent him from leaving. Significantly, a conspirator can absolve himself from *Pinkerton* liability by withdrawing from the conspiracy. *United States v. Mann*, 161 F.3d 840, 859–60 (5th Cir. 1998). Analogizing to the instant matter, "withdrawal" would be leaving the country before committing an act that brings the deported alien under a criminal justice sentence.

Flores further argues that because § 4A1.1(d) would not have been triggered had he been sentenced for his § 1326 offense before receiving his DWI sentence, approving the guideline's application here would impermissibly give the government control over its application in any illegal-reentry case. In other words, a defendant's punishment would partially depend on a government decision, not his own conduct. There is no evidence, however, that a desire to increase Flores's punishment brought about his DWI arrest and incarceration or the timing of ICE's discovery of his unlawful presence. Although pretextual government decisions that are meant to cause increased punishment might "violate[] the principle of fundamental fairness under the due process clause of the Fifth Amendment," *United States v. Sandlin*, 589 F.3d 749, 758–59 (5th Cir. 2009) (citation omitted), we need not consider this question to resolve Flores's as-applied challenge.[3]

---

[3] In a recent opinion, the Ninth Circuit rejected many of the arguments that Flores has raised:

> Though [the defendant] could not avoid being "found in" the United States while he was incarcerated, he could have avoided committing the "found in" crime by not re-entering. As for the possibility that he might have avoided the [§ 4A1.1(d)] enhancement had he been reported to ICE when he was arrested but before he was convicted for his grand theft, his criminality would not have been any the less. He was not supposed to come back, and he was not supposed to commit grand theft. He voluntarily took the risk of a [§ 4A1.1(d)] enhancement by committing the grand theft after his illegal reentry.

## B.    Penological Justification

Flores contends that increasing his punishment for remaining in this country while in custody violates the Eighth Amendment because it "lack[s] any legitimate penological justification." *See Graham v. Florida*, 130 S. Ct. 2011, 2028 (2010). We disagree.

Flores argues that applying § 4A1.1(d) pretextually punishes him for his DWI conviction. This is prohibited, he submits, because a defendant's prior convictions are already accounted for under § 4A1.1(a)–(c), which provides for increases in a defendant's criminal history score based on the quantity and severity of his prior criminal sentences. He further contends that, by its terms, § 4A1.1(d) can be invoked to punish him only for the "instant offense"—i.e., the § 1346 violation, not the DWI offense.

Assuming *arguendo* that these purported prohibitions apply here, they have not been violated. Because the district court was permitted to consider Flores's "continuing course of conduct" for § 4A1.1(d) purposes, *United States v. Harris*, 932 F.2d 1529, 1538–39 (5th Cir. 1991), it properly viewed as "relevant conduct" Flores's actions during the time he unlawfully remained in this country, including the DWI offense and its foreseeable consequences. By committing this offense, Flores did not simply prolong his illegal presence in this country; he prolonged it in a way that imposed a burden on the state's penal resources. Increasing Flores's punishment for burdening the state aligns with the purpose of federal immigration laws, which historically have been aimed at, *inter alia*, preventing aliens from becoming charges of the state. *See* H.R. Rep. No. 82-1365 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1653, 1653–74. Thus, applying § 4A1.1(d) did not add punishment for the DWI offense itself, but

---

*United States v. Reyes-Ceja*, No. 11-50167, 2013 WL 1285986, at *4 (9th Cir. Apr. 1, 2013). The court further held that a defendant violates § 1326 when he "voluntarily return[s] to the United States or voluntarily remain[s] after an involuntary entry." *Id.* at *3.

rather for causing an unnecessary consumption of state penal resources in the course of his § 1326 violation.[4] Moreover, assuming that the district court would have limited Flores's sentence to the high end of the Guidelines range absent the § 4A1.1(d) adjustment, his term of imprisonment was lengthened by nine months. Relative to the conduct we have discussed, this is not "unconstitutionally excessive." *See Graham*, 130 S. Ct. at 2021.

Flores also contends that applying § 4A1.1(d) to a defendant who is in state custody perversely provides him with an incentive to escape from custody before ICE discovers him. This may well be true, but then, the conditions of penal confinement also provide an incentive to escape before sentence is imposed in a given criminal matter. This does not justify the abolition of imprisonment as a means of punishment.

### C.    *Santana-Castellano*

Finally, to preserve the issue for further review, Flores challenges our holding in *Santana-Castellano*, 74 F.3d at 598. This issue is foreclosed. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[4] As Flores correctly notes, this objective would not have been achieved if he had been discovered before receiving his DWI sentence. If ICE had discovered Flores before the state court sentenced him, however, the government could have prevented the expenditure of state resources by removing Flores to federal custody before his DWI sentence began. In any event, we need not further explore this hypothetical scenario to address Flores's as-applied challenge.