# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51292

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

EDUARDO A. ROBLES

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:12-CR-1478-1

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

Defendant Eduardo A. Robles pled guilty to assaulting a federal officer in violation of 18 U.S.C. § 111(a). Robles was sentenced to 51 months pursuant to U.S.S.G. § 2A2.2, which applies to "aggravated assault." Robles appeals his sentence, arguing that he should have been sentenced under § 2A2.4, the guideline that applies to simple assault. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-51292

## FACTS AND PROCEEDINGS

Eduardo A. Robles ("Robles") pled guilty without the benefit of a plea agreement to 18 U.S.C. § 111, assaulting a federal officer. [1]  ROA 48.  On May 25, 2012, an officer with the El Paso, Texas Police Department attempted to conduct a traffic stop on Robles, who was observed driving over 100 m.p.h. Presentence Rep. ("PSR") ¶ 3.  While attempting to flee into Mexico, Robles crashed into a metal barricade.  PSR ¶¶ 3-5.  Upon observing Robles collide with the barrier, Border Patrol Agent James Lowry ("Lowry") took cover behind his vehicle, which was parked between Lowry and the Mexican border. PSR ¶ 5.  In an attempt to flee to Juarez, Mexico,[2] Robles got out of his vehicle and "physically charged" at Agent Lowry, "intentionally" running towards him. PSR ¶¶ 4-5.  He impacted Lowry, causing the agent to fall backwards approximately 10 feet, hitting his head on the pavement and suffering minor injuries.  PSR ¶¶ 5-6.  An officer smelled alcohol on Robles's breath and noticed two open containers of alcohol on the floor of Robles's vehicle.  PSR ¶ 3.

The PSR applied § 2A2.2(a) and assigned Robles a base offense level of 14.  PSR ¶ 13.  After various adjustments, Robles's total offense level was 22. PSR ¶¶ 14-22.  When that level was combined with a criminal history category of III, the resulting guidelines imprisonment range was 51 to 63 months.  PSR ¶¶ 24-30, 50.  Robles objected, contending that the probation officer should have applied § 2A2.4—rather than § 2A2.2—when determining the offense level because his conduct did not constitute "aggravated assault."

---

[1] Section 111 does not differentiate between simple assault and aggravated assault. That distinction is found in U.S.S.G § 2A2.4(c)(1)—the applicable guideline for § 111—which states that "[i]f the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."

[2] ROA 111 ("After waiving his Miranda rights, Robles stated that he had been drinking and was trying to get to Juarez, Mexico.").

2

No. 12-51292

The Government responded that the probation officer applied the correct guideline, reasoning that Robles's conduct was an aggravated assault because he committed it with the intent of committing another felony, specifically, felony flight by motor vehicle and a third driving while intoxicated offense.

At sentencing, defense counsel reiterated his contention that § 2A2.4 should apply in determining the offense level. ROA 69-71. The Government persisted in its view that § 2A2.2 was the appropriate guideline. ROA 76-80. It urged that Robles assaulted the agent as Robles was driving while intoxicated and fleeing in a motor vehicle, both felonies under Texas law. ROA 77. The Government acknowledged that it was possible that when Robles crashed his vehicle, he was no longer trying to evade authorities, but maintained that the "better argument" was that fleeing in the vehicle, running, and assaulting the agent, were all a part of Robles's attempt to avoid being caught for drunk driving and fleeing in a motor vehicle. ROA 78. The district court agreed with the Government but did not make any specific factual findings. ROA 81-82. It imposed a sentence of 51 months of imprisonment, the bottom of the guidelines range. ROA 82. Robles filed a timely notice of appeal. ROA 58.

**STANDARD OF REVIEW**

The court reviews the district court's interpretation and application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). The district court's determination that Robles's conduct evidenced an intent to commit another felony during the course of felonious assault is a factual finding. *See, e.g.*, *United States v. Goynes*, 175 F.3d 350, 353 (5th Cir. 1999) ("The district court's determination that [the defendant's] conduct evidenced an intent to carry out his threat [resulting in a six-level increase under

No. 12-51292

U.S.S.G. § 2A6.1(b)(1)] is a factual finding, and must be reviewed for clear error."). "[I]n determining the applicability under the present § 2A2.4(c)(1) of § 2A2.2, the district court is not limited to considering the conduct of the offense of conviction, but also may consider the defendant's 'underlying conduct' or, as some courts state, the 'relevant' conduct." *United States v. Street*, 66 F.3d 969, 979 (8th Cir. 1995); *United States v. Valdez-Torres*, 108 F.3d 385, 387 (D.C. Cir. 1997).

## DISCUSSION

The question on appeal is not whether the district court properly applied or interpreted the sentencing guidelines. Rather, the question is whether Robles's conduct evidenced an intent to commit another felony during the course of felonious assault. Unless the district court's determination that he intended to commit another felony was clearly erroneous, we must affirm.

The offense level for Obstructing or Impeding Officers, U.S.S.G. § 2A2.4, is calculated as follows:

(a)    Base Offense Level: 10

(b)    Specific Offense Characteristics

    (1)    If (A) the offense involved physical contact; or (B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels.

    (2)    If the victim sustained bodily injury, increase by 2 levels.

(c)    Cross Reference

    (1)    If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault).

In turn, U.S.S.G. § 2A2.2 cmt. n.1, defines "aggravated assault" as "a felonious assault that involved . . . (C) an intent to commit another felony." The

4

government argues that Robles assaulted Lowry—a felony under 18 U.S.C. § 111—with the intent to commit the felony of evading arrest with a vehicle.[3]

Texas Penal Code section 38.04—Evading Arrest or Detention—provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Section 38.04(a). While evading arrest is generally a misdemeanor, it becomes a "state jail felony" if "the actor uses a vehicle . . . while the actor is in flight." There is no question that Robles used a vehicle in his initial attempt to evade the police prior to the assault. The question is whether he *intended* to evade the police using a vehicle *when he assaulted* Lowry. Robles argues that the crime of evading arrest using a vehicle was complete when he abandoned the car, negating the intent necessary to elevate his simple assault into aggravated assault.

Because the felony at issue is a product of Texas law, we are bound by the state court's construction of evading arrest. "A State's highest court is unquestionably 'the ultimate exposito[r] of state law.'" *Riley v. Kennedy*, 553 U.S. 406, 409 (2008). Under Texas law, the crime of fleeing arrest in a vehicle is a continuous offense. *See Hobbs v. State*, 175 S.W.3d. 777, 778 (Tex. Crim. App. 2005). In *Hobbs*, defendant used a vehicle to flee from police officers. 175 S.W.3d at 778. He eventually abandoned the vehicle, fled on foot, and began searching for a place to hide. Defendant broke in to a woodshed, where the police later found him hiding. He was convicted for burglary of a habitation with intent to commit felony evading arrest. On appeal, defendant argued that "because the felony evading arrest offense was completed when [he] abandoned his vehicle"—before his entry into the woodshed—he lacked the felonious

---

[3] In the district court, the government also argued that Robles intended to commit his third driving while intoxicated offense—a state felony—while assaulting the agent, but it did not brief this contention on appeal and we do not address it.

No. 12-51292

"intent" required to sustain his burglary conviction. *Id.* at 778-79. Because evading arrest on foot was merely a misdemeanor, defendant argued that he lacked felonious intent at the time he broke-in to the woodshed.

The Court of Criminal Appeals of Texas ("CCA") affirmed his conviction. Finding that the felony of evading arrest using a vehicle continues until the defendant is apprehended, the CCA held that "the evidence must show only that appellant used a vehicle at some time during the commission of this offense." *Id.* at 781. Because the plain text of section 38.04(a) "does not define separate offenses (or 'allowable units of prosecution') when different methods of locomotion are used," it does "not require that appellant intended to use his abandoned vehicle (or some other vehicle) when he entered the habitation."[4] *Id.* at 779.

Likewise, under our own precedent, "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." *United States v. Santana-Castellano*, 74 F.3d 593, 597 (5th Cir. 1996) (quoting *United States v. Midstate Horticultural Co.,* 306 U.S. 161, 166 (1939)). The unlawful series of acts, "by its very nature, does not terminate until the date of the indictment or the voluntary termination of the illegal activity." *United States v. Maxim*, 55 F.3d 394, 398 (8th Cir. 1995). In *Santana-Castellano*, we applied a continuing offense analysis to determine whether criminal history

---

[4] In the CCA's view, separating offenses by means of locomotion would lead to absurd results. *See id.* at 779 ("Under appellant's construction of Article 38.04(a), therefore, a person would commit 10 evading arrest offenses when (1) that person fled from the police in his car which he abandoned and (2) fled on foot until (3) he used a small-wheeled (less than 14 inches in diameter) bicycle which he abandoned and (4) fled on foot until (5) he used a pair of roller skates which he abandoned and (6) fled on foot until (7) he used a pair of roller-blades which he abandoned and (8) fled on foot until (9) he used a skateboard which he abandoned and (10) fled on foot until he was caught.").

6

points were correctly calculated under the Guidelines. Santana-Castellano was an alien who had previously been deported, had illegally reentered and was ultimately convicted and sentenced in Texas state court for injury to a child. While serving his state sentence, he was interviewed by INS and discovered to be illegally present in violation of 8 U.S.C. § 1326. *Santana-Castellano*, 74 F.3d at 595. This court determined that because illegal reentry was a continuing offense, it was not error for the district court to find that the offense was committed "while under any criminal justice system sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *Id.* at 598. The court reasoned that because the illegal reentry offense started when Santana-Castellano entered the United States and did not terminate until he was discovered by the INS agents, he continued to commit the offense while in Texas state prison. *Id.* (citing *Maxim*, 55 F.3d at 397).

Applying both our precedent regarding continuing offenses and *Hobbs*'s determination that evading arrest using a vehicle is a felony that continues until the suspect is apprehended, it is clear that Robles assaulted Lowry with intent to commit a separate felony. There is no doubt that he attempted to flee using a vehicle, nor that he was attempting to flee to Juarez, Mexico, once he exited the car and attacked Lowry. Under *Hobbs*, the fact that he abandoned his car is irrelevant; it is sufficient that he (1) formed the intent to flee, (2) utilized a vehicle, and (3) was continuing his flight at the time of the assault. The intent to evade arrest using a vehicle was established, and would not cease until he was apprehended or voluntarily terminated the illegal activity of

7

fleeing from law enforcement authorities.[5]  The district court's application of § 2A2.2 was not clear error.

## CONCLUSION

For the reasons stated, the judgment of the district court is AFFIRMED.

---

[5] Robles's argument that *United States v. Gomez-Vega* governs this case is without merit.  471 F. App'x 327 (5th Cir. 2012).  Unlike evading arrest using a vehicle—which continues until the suspect is apprehended—this court in *Gomez-Vega* found that the would-be intended felonies had already been completed.  If Robles had already been apprehended, but then escaped on foot, *Gomez-Vega* might apply.  But because he never completed the offense of evading arrest using a vehicle, this case is inapposite.