**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**October 3, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 02-51143

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CYNTHIA ANNETTE THOMPSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(02-CR-236)

Before BARKSDALE, DeMOSS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Appellant Cynthia Annette Thompson ("Thompson") was found guilty of violating 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii), for possession of more than 100 kilograms of marijuana with intent to distribute. The district court sentenced Thompson to 60 months' imprisonment and four years' supervised release, and ordered Thompson to pay a $100 special assessment. At the close of evidence, Thompson requested a jury instruction on the defense of justification, which the district court refused. Thompson now

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

appeals this refusal as harmful error. Because the district court did not abuse its discretion in refusing the requested instruction, we AFFIRM the decision below.

## BACKGROUND

On January 14, 2002, at about 6:45 a.m., a blue Chevrolet Caprice Classic entered the Fabens port of entry east of El Paso, Texas, located across the Rio Grande from the village of Caseta, Mexico. Immigration and Customs Inspector Ferlin Smith ("Smith"), who was stationed at the primary inspection lane, questioned the driver about the car's ownership. The driver replied that a friend had loaned him the vehicle. In response to Smith's questions regarding citizenship, the driver presented his resident alien card. Smith then questioned Thompson, the only passenger in the car, about her citizenship. She declared she was an American and presented her Kansas Driver's License. When asked about her purpose for going to Mexico, Thompson replied that she went there to party and that the driver, whom she did not know, was just giving her a ride back.

Smith then escorted the vehicle to the secondary area for a more thorough inspection. Nothing was found, and the car was cleared. After the second inspection, the car proceeded onto the seldom-used Lower Island Road leading to a levee of the Rio Grande instead of taking the typical route. The Lower Island Road is a route known to be used for picking up illegal aliens or drugs.

2

Smith contacted the Border Patrol to keep a lookout for the Caprice.

There were three agents already stationed in the levee area due to earlier sensor activity. Agent Antonio Butron ("Butron") was stationed a half mile or so from the sensor activity, while Agent Melissa Herrera ("Herrera") and another agent were stationed closer to the levee. Later that morning, the agents received a radio-dispatch indicating a suspicious vehicle, described as a blue Caprice with two occupants. From a tower, Herrera spotted the Caprice "slow rolling" westbound on the Lower Island Road. The car then turned south onto a dirt road. Herrera then saw the vehicle stop, and a group of people loaded large bundles into the trunk and backseat of the car. The driver got out of the car and, with the other individuals who had loaded it, ran south to the levee. The car then began traveling in the direction from which it came.

Herrera advised the other agents of what she observed, and soon thereafter, Butron intercepted the slow-moving car on the dirt road. He gestured for the vehicle to stop, and it did. Thompson was the driver, and no one else was in the car. Butron approached and asked Thompson to lower her window and turn off the engine. Thompson asked, "What's wrong, Officer?" without lowering the window. Butron asked Thompson to state her citizenship, which she did, and she showed her Kansas Driver's License after finally lowering the window. Butron detected a strong odor of marijuana. He then asked if the vehicle belonged to her, and Thompson replied

3

no, it belonged to a friend.

Butron asked Thompson if she knew what was inside the car, and she said she did not know. Thompson went on to describe how the man who had been driving had left her while people began loading bags into the car. She stated that she was scared and that she felt she could do nothing but drive off. Thompson never admitted to knowing that there was marijuana in the car, and by all accounts, appeared not to know what was going on.

The vehicle was found to contain approximately 325 pounds of marijuana, and Thompson was arrested and taken into custody by the Border Patrol. At the Fabens station, Thompson was interrogated first by Herrera and then by DEA Agents Caesar Hernandez and Jason Hoff. Thompson agreed to waive her Miranda rights and gave the following explanation of events.

Thompson stated that she was a waitress at an El Paso Red Lobster, where on suggestion of bartender Manny Vaquera, she befriended a man sitting at the bar. She knew him as "Jesus."[1] After her shift ended at about 11:30 p.m. on January 13, Thompson went to the Airway Pub with some coworkers, where she had a few drinks and then went home at about 2:00 a.m. Later, Thompson received a call from Jesus, who asked her about going to a party. She said "sure" and was picked up by Jesus and Vaquera. They revealed the party was in Mexico, and Vaquera drove all three of

---

[1] "Jesus's" actual name is Luis Buendia.

4

them to Juarez. In Juarez, Jesus took over the driving and drove to a house where they met some people.

Once at the party, Thompson noticed the party consisted of only men and was winding down, so she asked to be taken home. Vaquera told her he was staying at the party, and Jesus said another man was going to give her a ride back to the United States. Thompson did not know this man and had problems communicating with him in English. Vaquera then gave her a cell phone preprogrammed with a number that she was to call him if she needed.

The rest of Thompson's account closely reflects the facts already outlined above. In addition, she stated the cell phone Vaquera had given her rang after she and the driver left the point of entry, and she answered it. It was Vaquera, but after he asked where she was and she replied she did not know except that she saw the Martinez Ranch sign, the signal broke up. Thompson also testified that after the men had thrown the bundles into and then run from the car (including the driver), she received another call on the phone. A voice she assumed to be Vaquera's told her to drive to the stop sign and that he could see her. She began to drive, and Butron intercepted her before she reached that stop sign.

Thompson was indicted on four counts: (1) conspiracy to import more than 100 kilograms of marijuana under 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(g); (2) importation of more than 100 kilograms of marijuana under 21 U.S.C. §§ 952(a), 960(a)(1), and

5

960(b)(2)(g); (3) conspiracy to possess with intent to deliver more than 100 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vii); and (4) possession with intent to distribute more than 100 kilograms of marijuana under 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vii).  Her first trial ended in a mistrial.  At her second trial, Thompson moved for a judgment of acquittal both at the close of the Government's case and at the close of the evidence.  The district court granted the motion as to the second count (importation).  At the close of the evidence, Thompson requested a jury instruction as to the defense of justification, duress, or coercion.  The district court refused this instruction, and the jury returned a guilty verdict only as to the fourth count (possession).

### DISCUSSION

**Whether the district court abused its discretion in refusing Thompson's requested jury instruction.**

A district judge has broad discretion in formulating the jury charge so long as the charge accurately reflects the law and the facts of the case. *United States v. Allred*, 867 F.2d 856, 868 (5th Cir. 1989) (citation omitted).  The given charge is considered as a whole, in the full context of the trial.  *Id.* (citing *United States v. Chavis*, 772 F.2d 100, 108 (5th Cir. 1985)).  A district court acts properly if it declines to give a requested jury instruction because it "incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the

6

instructions." *Id.* (quoting *United States v. Robinson*, 700 F.2d 205, 211 (5th Cir. 1983)).  Thus, we review a district court's refusal to submit a requested jury instruction for abuse of discretion.  *United States v. Posada-Rios*, 158 F.3d 832, 875 (5th Cir. 1998).

The instruction requested by Thompson did adequately reflect what a jury must find by a preponderance of the evidence to acquit a defendant on the affirmative defense of justification.  *See* *Id.* at 873.  Also, such instruction was not otherwise covered in the jury charge.  Thompson's requested instruction included the four required elements of justification:

(1)  The defendant was under an unlawful present, imminent, and impending threat of such a nature as to induce a well-grounded fear of death or bodily injury to herself [or to a family member]; and
(2)  The defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to choose the criminal conduct; and
(3)  The defendant had no reasonable legal alternative to violating the law, that is, she had no reasonable opportunity to avoid the threatened harm; and
(4)  A reasonable person would believe that by committing the criminal action she would directly avoid the threatened harm.[2]

---

[2] The authority for Thompson's requested justification instruction was Fifth Circuit Pattern Jury Instruction 1.36 (2001 ed.).  As more consistently reflected in our case law, the wording of the fourth element is "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm." *Posada-Rios*, 158 F.3d at 873 (quoting *United States v. Harper*, 802 F.2d 115, 117 (5th Cir. 1986)).

Since justification is an affirmative defense, a defendant must present evidence of each of the four elements before the defense may be presented to the jury. *Id.* In determining whether a defendant has made a threshold showing of each of the elements of a defense, a court must objectively evaluate the facts presented by the defendant. *Id.*

Relying on **United States v. Cordova-Larios**, 907 F.2d 40, 42 (5th Cir. 1990), Thompson argues that an accused is entitled to have the jury instructed on a defense theory for which there is "any foundation in the evidence." However, this contention is not a completely accurate statement of the law. This "foundation" is not set on the ground floor, at the "merest scintilla" benchmark. *See* **United States v. Branch**, 91 F.3d 699, 713 (5th Cir. 1996) (noting such minimal showing does not warrant an affirmative defense instruction). Such evidentiary foundation is set and met at a higher level: "[I]n order for a defendant to be entitled to an instruction, any evidence in support of a defensive theory must be sufficient for a reasonable jury to rule in favor of the defendant on that theory." **United States v. Stone**, 960 F.2d 426, 432 (5th Cir. 1992) (internal quotes and citation omitted). In other words, a district court may properly refuse to give a requested instruction that lacks a sufficient enough foundation in the evidence. *See* **Branch**, 91 F.3d at 713.

Here, the district court considered Thompson's requested

justification instruction and its required elements in light of the evidence presented in the course of the trial. Upon doing so, the district court made the determination that it did not "find any evidence as to one or more of those elements." That is, the lower court refused the instruction because Thompson had failed to present any sufficient evidence for a reasonable jury to find that she was justified in her criminal behavior and thus should be found not guilty.

An objective analysis of Thompson's evidence persuades us that Thompson failed to present sufficient evidence as to one or more elements of the justification defense. As to the first element, we have noted that the threat faced by a defendant must arise out of "a real emergency leaving no time to pursue any legal alternative." *Posada-Rios*, 158 F.3d at 874. Thompson cited several facts she believes sufficiently show that she objectively and reasonably feared imminent harm. She noted that she was on a levee of the Rio Grande, near a dirt road; she was not sure of her location; she knew of no store or gas station close by; the levee was a dangerous place; there were several men "lurking" who had an interest in the bundles placed in the car; and she was afraid to get out of the car. However, there is no evidence that either the driver, the men on the levee, or the voice on the phone physically or verbally threatened to harm her or forced her to do anything. Also, Thompson never specified precisely what she feared would happen to

her if she did try to exit the car. There is no evidence that she felt any immediate threat that the "lurking" men would kill her or physically hurt her in any way; in fact, the evidence indicates that all of them ran away from the car after they had filled it with the marijuana bundles. No "real emergency" threatened her life or person, and fear alone is not sufficient evidence of a "present, imminent, and impending threat." The district court's implied finding that Thompson did not face such a threat is not an abuse of discretion.

As the Government did not contest on appeal that Thompson did not provide sufficient evidence as to the second element of justification, we need not discuss it.

To meet the third element, a defendant must show that she "had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative." *Id.* (quoting *Harper*, 802 F.2d at 118). If the situation allowed the defendant to select from several alternatives, including noncriminal ones, the defense fails. *Id.* (citation omitted). Here, Thompson claimed there was no reasonable alternative to driving the Caprice (and thus possessing the marijuana) because she is a young woman who was stranded in an unfamiliar place near several men engaged in the drug trade. However, the evidence does not rule out that reasonable noncriminal alternatives did exist. Thompson did not attempt to refuse to

10

drive the car, nor did she use the cell phone she had been given to dial "911" or another number for emergency assistance, or the number Vaquera had preprogrammed.[3] Plus, Thompson testified the sun was up and it was light outside at the time, so another reasonable alternative would be to exit the car and walk to the nearby stop sign and attempt to summon assistance. Again, the evidence indicates the men had run away from the car so they could not be preventing her exit. Nothing in the record indicates either that Thompson tried any of these alternatives to driving away in the marijuana-laden car or that any of these alternatives was foreclosed to her. The district court's implied finding that Thompson had untried, reasonable, legal alternatives available is not an abuse of discretion.

As for the fourth element, Thompson claimed the direct causal relationship was satisfied because her criminal act of driving the car and thus possessing the marijuana was a reasonable way to avoid the threatened harm. Thompson argued that driving the car meant she could get away from the men who had loaded the bundles, reduce the imminent threat, and take some time to calm down. However, again, Thompson presented no evidence that the men were pursuing

---

[3] There is some evidence in the record that Thompson did try to press a button on the phone. After this attempt, though, she made no further attempts to call out. Her testimony indicates that the phone was not locked, meaning no pin number or code had to be entered before an outgoing call could be made. And at about 7:26 a.m. that same morning, the Border Patrol successfully made an outgoing call after they had confiscated the phone.

11

her or the car, or that she actually had no time to calm down and think about what she should do before driving the car. Also, a direct causal link between clearly criminal behavior and avoidance of threatened harm is a stretch to show where, as here, the defendant's evidence does not sufficiently indicate any threat of harm existed. The district court's implied finding that there was no direct causal relationship between the possession of the marijuana and any threat to Thompson is not an abuse of discretion.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and for the reasons set forth above, we conclude that the district court did not abuse its discretion in refusing to instruct the jury on the affirmative defense of justification. Therefore, we AFFIRM the decision of the district court.

**AFFIRMED.**