United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 13, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 05-20544

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARTHUR GUNERA,

Defendant-Appellant.

---

Appeal from the United States District Court for
the Southern District of Texas
Houston Division, No. 4:04-CR-574-ALL

---

Before REAVLEY, JOLLY and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

Arthur ("Arturo") Gunera appeals his bench trial conviction for illegal presence in

the United States on grounds that (1) the indictment was barred by the statute of

limitations, (2) the felony and aggravated felony provisions of 8 U.S.C. § 1326(b)(1) are

unconstitutional, and (3) his prior state conviction for simple possession of a controlled

substance should not have been treated as an aggravated felony for sentencing purposes.

We reverse Gunera's conviction and dismiss the indictment against him.

I. <u>Background</u>

Gunera, a citizen of Honduras, initially entered the United States in July 1990. In January 1991, he was convicted of possession of a controlled substance under Texas law and sentenced to three years' imprisonment. He was released in June 1991 and deported to Honduras. After a second removal in 1992, Gunera re-entered the United States.

On August 18, 1999, Gunera filed an application with the Immigration and Naturalization Service ("INS") for Temporary Protected Status ("TPS") with the INS's Texas Service Center. He provided his true name, date of birth, and place of birth, all of which had been known to the INS at the time of his 1991 deportation. The application also contained Gunera's then-current Texas address. He did not disclose that he had been previously convicted of a crime and deported, or that he had been issued an alien registration number ("A-Number") in the past.

At the same time he submitted his TPS application, Gunera applied for an employment authorization document ("EAD"). That application was approved and an EAD issued under the same A-Number under which Gunera had been deported in 1991.

On September 28, 1999, the Texas Service Center ran a NAILS[1] inquiry based on Gunera's name and date of birth. The inquiry revealed the prior conviction for drug possession in 1991 and that Gunera had been deported to Honduras in 1991 as an aggravated felon. The NAILS inquiry provided the same A-Number under which Gunera

---

[1] National Automated Immigration Lookout System.

was deported.

On October 1, 1999, the INS responded to Gunera's TPS application by correspondence to the provided home address, informing him of its intent to deny his application based on discovery of his prior conviction. The correspondence also informed him that he was required to submit fingerprints if he had not already done so.

On November 23, 2004, Gunera reported to the offices of Immigration and Customs Enforcement ("ICE") pursuant to correspondence requesting that he appear for further processing. He was arrested and held in ICE custody. Gunera moved to dismiss the illegal presence indictment of December 20, 2004 as being returned more than five years following the date he was "found" in the United States. Following an evidentiary hearing on that issue, the district court denied the motion to dismiss. Gunera was convicted following a bench trial.

Gunera was assessed an eight-level base increase and a Category II Criminal History based on his prior conviction for possession, resulting in a 15-21 month sentencing guideline. Gunera objected to the eight-level increase based on the 1991 simple possession and to the constitutionality of 18 U.S.C. §1326(b), both objections being denied by the district court. The court imposed the minimum Guideline sentence of fifteen months' imprisonment with three years of supervised release.

## II.  Gunera's Limitations Argument

We review the district court's fact findings in relation to the statute of limitations for clear error and its legal conclusions de novo. See United States v. Wilson, 322 F.3d

353, 359 (5th Cir. 2003).

Under 8 U.S.C. § 1326, an alien who has previously been denied entry or been deported or removed commits the offense of illegal reentry when the alien thereafter "enters, attempts to enter, or is at any time found in, the United States . . . ." The statute of limitations applicable to § 1326 is found in 18 U.S.C. § 3282, and provides that 'no person shall be prosecuted, tried or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years after such offense shall have been committed."

In United States v. Santana-Castellano, 74 F.3d 593, 598 (5th Cir. 1996), we adopted the following as the standard for determining when an alien is "found in" the United States for purposes of § 1326:

> . . . we hold that a previously deported alien is "found in" the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to immigration authorities.

We have recently recognized that the holding of Santana-Castellano continues to be the standard by which we determine whether an alien has been "found in" the United States for purposes of the applicable five-year statute of limitations under 18 U.S.C. § 3282. See United States v. Flores-Leal, 134 Fed. App'x 691, 692 (5th Cir. 2005).

The Government argues that when an alien employs deception by omitting information or giving false information, the Government, exercising ordinary diligence,

4

cannot be held accountable for knowledge of the alien's illegal presence. Gunera, the Government claims, could not be positively identified as being illegally present in the U.S. since he (1) omitted the facts that he had previously been issued an A-number and convicted, and (2) failed to submit fingerprints with his TPS application, thus concealing his true identity. Accordingly, the Government devotes much of its briefing to whether due diligence could have revealed Gunera's illegal presence such that the INS should be charged with constructive knowledge of Gunera's presence.

However, we believe the immigration authorities can reasonably be attributed with actual knowledge that Gunera was present illegally in the U.S. on September 28, 1999, when the NAILS system identified him as having a prior deportation based on a prior conviction for an aggravated felony, that inquiry having been run on the same name, same date of birth, and same country of origin as Gunera submitted on his TPS application. Gunera's TPS application also provided a U.S. address at which Gunera could be physically located.

The fact that Gunera omitted information regarding his prior deportation, criminal history, and A-number from his TPS application is not relevant because the INS had in fact found that missing information as of September 28, 1999 when the NAILS inquiry was run. We thus find distinguishable the cases cited by the Government involving the application of the statute of limitations in the context of illegal reentry prosecutions in which immigration authorities could not have known of the illegality of the alien's presence because the alien gave a false name or omitted other key information in an

5

attempt to conceal his identity.

Here, Gunera used his true name, date of birth, and country of origin such that the agency was readily able to run the NAILS inquiry and discover a fairly certain match with the previously convicted and deported Arturo Gunera. The October 1, 1999 denial of Gunera's application for immigration benefits based on the same conviction that was revealed in the September 28, 1999 computer print-out is a strong indicator that the Government had actual knowledge of the illegality of Gunera's presence as of that date.

To demand the level of extreme certainty of identity the Government advocates — requiring a fingerprint match to attribute actual knowledge to the immigration authorities — would impose a standard contrary to Santana-Castellano. As of September 28, 1999, the immigration authorities had in their files all of the relevant information to match the TPS applicant Gunera with the previously convicted and deported, and therefore illegally present, alien Gunera. Accordingly, we find that the standard set forth in Santana-Castellano was satisfied.

In finding that the Center should not be held to the Santana-Castellano standard, the district court relied on testimony that the Texas Service Center was a processing unit without investigatory functions and that it was overwhelmed by the volume of applications. The district court implicitly concludes that knowledge of the INS's Texas Service Center is not knowledge of the immigration authorities for purposes of the statute of limitations. We cannot agree. In 1999, the INS constituted the "immigration authorities," with that agency holding responsibility for both processing and investigative

6

functions.  Further, the Government admitted that there was in fact an Intelligence Unit stationed at the Texas Service Center, to which adjudicators could refer cases for criminal investigation, but the Center simply did not refer Gunera's file for further investigation of the NAILS inquiry results of 1999 until 2003.  This is not a case of attributing constructive knowledge across distinct agencies.  See Fornalik v. Perryman, 223 F.3d 523, 529 (7th Cir. 2000) ("[T]he last we checked, the INS is one unified agency of the federal government, not a mare's nest of competing and autonomous actors.").

III.  Conclusion

We conclude that, having been returned more than five years following the date Gunera was "found" in the United States, the indictment against him was barred by limitations.  We therefore do not reach Gunera's arguments related to the treatment of his prior conviction at sentencing.  We reverse the denial of Gunera's motion to dismiss on limitations grounds and dismiss the indictment.  This, of course, has no effect on whether Gunera is subject to removal.

CONVICTION REVERSED, INDICTMENT DISMISSED.