# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2013

No. 11-10921

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

OSVALDO COMPIAN–TORRES,

Defendant–Appellant.

Appeals from the United States District Court
for the Northern District of Texas

Before REAVLEY, PRADO, and ELROD, Circuit Judges.

PRADO, Circuit Judge:

Defendant–Appellant Osvaldo Compian–Torres was convicted of illegally reentering the country. He appealed his conviction, and this Court affirmed. We granted a motion for rehearing and now affirm.

**I**

Osvaldo Compian–Torres ("Compian") is a Mexican citizen who was removed from the United States in 1998 after admitting that he had entered the country illegally. He was apprehended again in 2000 and pleaded guilty to illegally reentering the country. After serving his sentence for the 2000 reentry, Compian was released into immigration custody and subsequently deported on November 7, 2003. The terms of his supervised release forbade him from

illegally reentering the country. Those terms notwithstanding, Compian illegally returned to the United States shortly after his deportation. Compian was then arrested and charged with assault in Dallas on January 12, 2004. However, the charges were dropped and Compian was released days later. The police apparently did not suspect that he was illegally present.

Around June 21, 2004, a probation officer became aware of Compian's January 2004 arrest and filed a petition alleging that Compian had violated the terms of his supervised release by illegally reentering the country. A warrant was issued on June 23, 2004, but Compian was not arrested until two years later. On July 28, 2006, the district court revoked Compian's supervised release and sentenced him to a term of imprisonment. On September 9, 2006, the Bureau of Prisons released Compian from its custody. At no point were immigration officials notified about Compian's reentry, arrest, imprisonment, or release, though a copy of the release revocation petition found its way into Compian's alien file.

On May 11, 2010, Compian was arrested for assault again. At some point officials began to suspect that Compian was illegally present, and so he was transferred to the custody of immigration officials on August 20, 2010. Immigration officials determined that Compian had been previously removed in 2003 and that he had illegally reentered sometime thereafter. Accordingly, on October 6, 2010, Compian was indicted for violating 8 U.S.C. § 1326. The indictment alleged that Compian had been removed on November 7, 2003, that he was found on or about August 20, 2010, and that he had not received permission to reenter the country. Compian pleaded not guilty and proceeded to trial.

The government presented four witnesses. The first witness was Officer Aaron Nation, a deportation officer with Immigration and Customs Enforcement ("ICE"). He described the contents of Compian's alien file and discussed the

No. 11-10921

procedure by which ICE is notified when suspected illegal aliens are in the custody of law enforcement. Usually, some other law enforcement agency suspects an individual is illegally present, at which point ICE is notified and the appropriate inquiries occur. Officer Nation further testified that ICE was not notified about Compian's arrest in 2004, nor his imprisonment and subsequent release, both of which occurred in 2006.

The government's second witness testified about his encounter with Compian, on August 20, 2010, after Compian was in ICE custody. The third witness testified to matching Compian's fingerprints to the fingerprints on Compian's 2003 warrant of removal. The government's last witness testified that there were no records indicating Compian had applied for or received permission to reenter the United States after he was removed on November 7, 2003.

After the government rested its case, Compian made a Rule 29 motion for a judgment of acquittal, which was denied. Compian did not present any witnesses and rested his case. The jury found Compian guilty and, on September 12, 2011, Compian was sentenced to 109 months' imprisonment. Compian then filed a timely appeal challenging the sufficiency of the evidence.

This Court issued an opinion affirming Compian's conviction on October 24, 2012. *See United States v. Compian–Torres*, No. 11-10921, 2012 WL 5246686, at *1 (5th Cir. Oct. 24, 2012). In that opinion, the Court applied a plain error standard of review to Compian's claim because, while couched in terms of sufficiency, Compian's appeal presented a purely legal question that had not been preserved in the district court. Compian filed a petition for panel rehearing on November 7, 2012. In his petition, Compian argued that the Court had not applied the correct standard of review. We granted Compian's petition on November 28, 2012.

No. 11-10921

## II

As this is a direct appeal from the final decision of a district court, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III

The Court granted Compian's motion for rehearing to reconsider which standard of review is appropriate when, as here, a challenge to the sufficiency of the evidence masks a purely legal question. As explained below, we need not address this question because Compian's claim fails even under the de novo standard he advocates.

## A

On appeal, this Court applies de novo review when a defendant preserves a challenge by making a motion for judgment of acquittal. *United States v. Valentine*, 401 F.3d 609, 615 (5th Cir. 2005). Under that standard, we affirm if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* When an issue is raised for the first time on appeal, however, we review for plain error. *United States v. Treft*, 447 F.3d 421, 424–25 (5th Cir. 2006). To show plain error, a defendant must show that a forfeited error is clear or obvious, and that it affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If such a showing is made, the Court has the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

In our initial opinion we applied plain error review to Compian's claim because it presented a purely legal question that had not been preserved in the district court. *Compian–Torres*, 2012 WL 5246686, at *1. We reached this conclusion based on the precedent set out in three cases: *Treft*, 447 F.3d at 424–25 & n.4 (reviewing for plain error a legal determination raised for the first time on appeal when the defendant had dropped his original motion for acquittal earlier in the proceedings); *United States v. Brace*, 145 F.3d 247, 257–58 & n.2

No. 11-10921

(5th Cir. 1998) (en banc) (reviewing for plain error a new, unpreserved legal subissue within an otherwise preserved sufficiency claim); and *United States v. Loney*, 959 F.2d 1332, 1334 (5th Cir. 1992) (reviewing for plain error when a preserved sufficiency claim in fact presents a purely legal claim).

Compian, in his motion for rehearing, cited three previously unmentioned cases in support of his assertion that de novo review should apply. *See United States v. Williams*, 602 F.3d 313, 315 (5th Cir. 2010) (applying de novo review to a sufficiency claim that required determining what conduct constitutes an offense under the relevant statute); *United States v. Cuellar*, 478 F.3d 282, 287 (5th Cir. 2007) (en banc) (reviewing de novo a sufficiency claim dependant on a question of legal interpretation), *rev'd on other grounds*, 553 U.S. 550 (2008); *United States v. Santos–Riviera*, 183 F.3d 367, 369 (5th Cir. 1999) (reviewing a challenge to the sufficiency of an indictment de novo when the appeal involved statutory interpretation). We granted Compian's petition in order to review our precedent within the context of this case. However, having reexamined Compian's case, this Court need not address which standard of review is appropriate because Compian's claim fails, even under the more generous de novo standard. As explained in more detail below, *see infra* Part III.B, Compian was "found" in 2010 when immigration authorities became aware of his physical presence; and a rational trier of fact could find Compian guilty beyond a reasonable doubt based on the evidence presented at trial.

**B**

Compian's appeal is phrased as a challenge to the sufficiency of the evidence, but it in fact presents a pure question of law. While Compian claims that there was insufficient evidence to convict him, this assertion entirely depends on a legal claim—namely, that he was "found" for purposes of 8 U.S.C. § 1326(a)(2) in 2004 and not in 2010, as the government claims. For the reasons that follow, Compian was "found" in 2010, and the evidence presented at trial

was sufficient to allow a rational trier of fact to find Compian guilty beyond a reasonable doubt.

Section 1326(a) authorizes penalties for any previously deported alien who is thereafter "found" in the United States. 8 U.S.C. § 1326(a). In the Fifth Circuit, "a previously deported alien is 'found in' the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities." *United States v. Santana–Castellano*, 74 F.3d 593, 598 (5th Cir. 1996). Thus, in order to be found, (1) immigration authorities must have specifically discovered and noted the alien's physical presence, and (2) knowledge of the illegality of the alien's presence must be reasonably attributable to immigration authorities. A § 1326 offense "begins at the time the defendant illegally re-enters the country and does not become complete unless or until the defendant is found by the [ICE] in the United States." *United States v. Corro–Balbuena*, 187 F.3d 483, 485 (5th Cir. 1999). "[T]he five year statute of limitations under § 1326 begins to run at the time the alien is 'found,' barring circumstances that suggest that the [ICE] should have known of his presence earlier, such as when he reentered the United States through an official border checkpoint in the good faith belief that his entry was legal." *Santana–Castellano*, 74 F.3d at 597.

Compian's position is that an alien is "found" under § 1326 whenever an agent of the federal government encounters an alien and knows or should have known that the alien's presence is unlawful. However, such a rule would constitute an unauthorized departure from this Circuit's precedent. *See French v. Allstate Indem. Co.*, 637 F.3d 571, 589 (5th Cir. 2011) (stating that one panel may not overturn another panel's decision absent an intervening change in law—such as a statutory amendment, a Supreme Court decision, or an en banc

court). In order to be "found" under § 1326, an alien's physical presence must be discovered and noted *by immigration authorities* and the illegality of the alien's presence must be reasonably attributable *to immigration authorities* through the exercise of typical law enforcement diligence. *Santana–Castellano*, 74 F.3d at 598. The first step of our test requires that immigration authorities discover and note the presence of the alien, and Compian does not contest the fact that, after his 2003 removal, he did not encounter immigration officials again until 2010. Thus, under the plain language of our test, it cannot be said that Compian was "found" in 2004 when he was arrested by state police officers and alleged to be in violation of the terms of his supervised release by a federal probation officer. The fact that Compian's alien file contained a copy of the revocation of his supervised release does not alter this outcome because holding otherwise would create a requirement that ICE actively monitor all alien files at all times for any information suggesting an alien had returned to the United States.

Furthermore, even if this panel could depart from the language of our established precedent, Compian's position would require imputing knowledge to immigration authorities whenever an alien's presence is discovered and noted by another government agent—i.e., the first prong of the test. Compian has not put forth any case law that supports his desired outcome. The first case he cites, *United States v. Gunera*, 479 F.3d 373 (5th Cir. 2007), dealt exclusively with the second prong of the § 1326 test and is thus inapposite. In *Gunera*, an unlawfully present alien applied for Temporary Protected Status ("TPS") through the immigration authorities using his real name, date of birth, and place of birth, while omitting his previous conviction, prior deportation, and alien number. 479 F.3d at 375. Using the information provided, the immigration authorities were able to discover Gunera's prior conviction and deportation, but they waited over five years to arrest him. *Id.* The government claimed that Gunera had not been "found" until his arrest because the immigration authorities were not aware that

No. 11-10921

Gunera's presence was illegal given that Gunera omitted critical information on his TPS application. *Id.* at 376. The Court rejected the government's position and held that "the immigration authorities can reasonably be attributed with actual knowledge that Gunera was present illegally in the U.S." when his prior deportation for an aggravated felony was discovered. *Id. Gunera* thus dealt exclusively with the second prong of our § 1326 test; the case hinged on when immigration authorities—who had already discovered and noted Gunera's presence—should have known that Gunera's presence was unlawful. The first prong was not in dispute because Gunera submitted his application directly to immigration authorities, thereby providing them with the requisite discovery and notice of his physical presence.[1] By contrast, Compian was arrested by state police and his supervised release was revoked by judicial officials. His physical presence was not discovered or noted by immigration authorities until he entered ICE custody in 2010, and the notice or actual knowledge of one United States government agency generally is not imputed to other agencies. *United States v. Harms*, 442 F.3d 367, 377 (5th Cir. 2006).

Compian also cites *United States v. Vargas–Garcia*, 434 F.3d 345 (5th Cir. 2005), in an attempt to expand the scope of our test from requiring discovery by "immigration authorities" to "the government" or just "authorities" more broadly. However, the selective quotations Compian relies upon are actually quotations from a Second Circuit case used in *Vargas–Garcia* merely to illustrate the circumstances under which an illegal reentry constitutes a continuing offense. *See* 434 F.3d at 349. In fact, when paraphrasing the Fifth Circuit's precedent on point, the court refers to "the relevant authorities," further underscoring the specific importance of "immigration authorities" in our § 1326 jurisprudence.

---

[1] Moreover, Gunera provided immigration authorities with his current physical address, further underscoring immigration authorities' awareness of his physical presence. *See* 479 F.3d at 375. The same cannot be said here.

No. 11-10921

*See id.* Moreover, even after *Vargas–Garcia*, the *Santana–Castellano* test has been continually applied verbatim in the Fifth Circuit. *See, e.g.*, *United States v. Santos–Guevara*, 406 F. App'x 874, 874 (5th Cir. 2010) (per curiam) (unpublished); *Gunera*, 479 F.3d at 376; *United States v. Alvarado–Santilano*, 434 F.3d 794, 798 (5th Cir. 2005).

Therefore, for an alien to be "found" under § 1326, immigration authorities must discover and note the alien's physical presence, and the illegality of the alien's presence must be known or reasonably attributable to immigration authorities. Ultimately, a rational trier of fact could find Compian guilty beyond a reasonable doubt based on the evidence presented at trial. The government presented witness testimony showing that Compian was taken into ICE custody in 2010, that Compian had previously been deported, and that Compian unlawfully reentered the United States sometime after his deportation. There was thus sufficient evidence to convict Compian.

**IV**

For the forgoing reasons, Compian's conviction is AFFIRMED.