# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50996

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARTURO RAMIREZ-SALAZAR,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The district court denied Arturo Ramirez-Salazar's motion to dismiss his indictment for illegal reentry under 8 U.S.C. § 1326(a) as time-barred. Ramirez timely appealed. We AFFIRM.

## FACTS AND PROCEDURAL BACKGROUND

Arturo Ramirez-Salazar is a citizen of Mexico. In November 2000, United States Border Patrol agents encountered Ramirez in Midland, Texas. He was immediately removed to Mexico because of a 1996 conviction in Texas for distribution of cocaine. On August 11, 2003, an I-130 Petition for Alien Relative was filed with United States Citizenship and Immigration Services to facilitate Ramirez's immigration to the United States. The petitioner was

No. 14-50996

Ramirez's wife, who declared her marriage to Ramirez.  Central to this appeal are details, discussed below, about the manner in which the form was partially filled out, and whether the limited information provided put immigration authorities on notice of Ramirez's presence in the United States.  In response to the I-130 Form, officials conducted an Interagency Border Inspection System ("IBIS") inquiry on Ramirez in 2005, which revealed his removal in 2000.  The petition was denied in April 2008.

In October 2013, Ramirez was arrested and indicted on one count of illegal reentry pursuant to 8 U.S.C. § 1326(a).  He filed a motion to dismiss the indictment as time-barred by the five-year statute of limitations under 18 U.S.C. § 3282(a).  The district court denied the motion. Thereafter, Ramirez agreed to plead guilty, reserving the right to appeal the denial of the motion to dismiss.  The district court sentenced him to prison for twelve months and one day.  Ramirez now appeals.


DISCUSSION

Section 1326(a) provides in part that any previously deported alien who, "thereafter . . . enters, attempts to enter, or is at any time *found* in, the United States" shall be fined or imprisoned or both as set forth in other related statutes.  8 U.S.C. § 1326(a) (emphasis added).  An offense under Section 1326(a) begins at the time the defendant illegally reenters the country and does not cease until the defendant is "found" by immigration authorities in the United States.  *United States v. Corro-Balbuena*, 187 F.3d 483, 485 (5th Cir. 1999).  Importantly, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."  18 U.S.C. § 3282(a).

Ramirez contends that he was "found" for purposes of Section 1326(a) on August 11, 2003, when the I-130 Form was filed.  He relies on a section of

the form that requires a petitioner to disclose the address of the alien relative for whom the form is being submitted. In the I-130 Form at issue here, the address listed for Ramirez was the same address as that listed for Ramirez's wife in Odessa, Texas. Therefore, Ramirez argues that his presence in the United States should have been clear to immigration authorities and the five-year statute of limitations should have begun to run the day the form was filed.

The Government counters that the I-130 Form was incomplete and misleading. Further, the form was not designed to be filed or filled out by the alien relative. Consequently, immigration authorities did not know and should not have been expected to know that Ramirez was physically present in the United States. The district court agreed with the Government, concluding that Ramirez was "found" for purposes of Section 1326(a) in October 2013 when he was arrested, his name appeared on a local probation roster, and immigration officials learned through a database search of his deportation history.

We have addressed what it means for an alien to be "found":

> [A] previously deported alien is "found in" the United States when his physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities, can reasonably be attributed to the immigration authorities.

*United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996). In summary, to be "found" within the meaning of Section 1326(a) requires that immigration authorities have: (1) actual knowledge of the alien's physical presence, and (2) actual or constructive knowledge that the alien's presence is illegal. *See United States v. Compian-Torres*, 712 F.3d 203, 207 (5th Cir. 2013).

Ramirez argues that the facts here are indistinguishable from *United States v. Gunera*, 479 F.3d 373 (5th Cir. 2007). There, the defendant, a citizen of Honduras, illegally reentered the United States after a second removal in

1992. *Id.* at 375. Seven years later, the defendant filed an application for Temporary Protected Status ("TPS")[1] that listed his true name, date and place of birth, and then-current Texas address. *Id.* He omitted a previous conviction, a prior deportation, and his alien registration number. *Id.* A NAILS[2] inquiry conducted in September 1999 revealed the defendant's prior conviction and deportation as an aggravated felon. *Id.* In response to the TPS application, the Immigration and Naturalization Service sent a letter to the defendant indicating its intent to deny his application. *Id.* In November 2004, the defendant reported to Immigration and Customs Enforcement offices, where he was arrested and held in custody. *Id.* He was indicted in December 2004 for his illegal presence and later convicted in a bench trial. *Id.*

In reversing the conviction, we concluded that immigration authorities could be reasonably attributed with actual knowledge that the defendant was present illegally in the United States on September 28, 1999. *Id.* at 376. That date indicates "when the NAILS system identified him as having a prior deportation based on a prior conviction for an aggravated felony, that inquiry having been run on the same name, same date of birth, and same country of origin as Gunera submitted on his TPS application." *Id.* We also noted that the defendant personally filed the TPS form seeking protected status for himself, in which he disclosed his then-current Texas address. *Id.* We dismissed the Government's argument that actual knowledge could not be inferred because the defendant had omitted certain information from the TPS application, such as "his prior deportation, criminal history, and [alien] number." *Id.* Such omissions were "not relevant because the INS had in fact found that missing information as of September 28, 1999 when the NAILS

---

[1] TPS Forms are for eligible nationals of designated countries who seek temporary immigration status. *See United States v. Orellana*, 405 F.3d 360, 364 n.22 (5th Cir. 2005).

[2] National Automated Immigration Lookout System.

inquiry was run." *Id.*

Unlike in *Gunera*, the document filed with immigration authorities in this case was to be filled out by a petitioning relative on behalf of the alien. The whole structure of the form follows that design, with the relative to make the assertions and the alien to be the statements' beneficiary.  Here, though, Ramirez's wife did not sign the form, Ramirez did.  The district court stated in its opinion that Ramirez's wife did not fully complete the form, implying that the court found that she was the one who filled in at least some of the information.  Several questions were left blank, including, most importantly to the issue before us, questions about whether the relative (Ramirez) was currently in the United States, the status in which he entered "(visitor, student, stowaway, without inspection, etc.)," his arrival date, and the date his authorized stay expired.  The I-130 Form also futilely requested the I-94 Form that would show Ramirez's arrival and scheduled departure dates.

The district court held that leaving these sections blank "completely contradict[ed]" the inference arising from the other part of the form listing Ramirez's address as being the same as his wife's address in Texas.  The district court referred to testimony by a Government witness who had seen other forms in which a petitioning relative "erroneously filled in the wrong current address," using a prior address or, as here, the petitioner's own address.  The witness also said it was not uncommon for the relative to prepare the form, send it to the out-of-country relative to sign, and then receive it back for filing.  The district court relied in part on the fact that the I-130 Form was filed three days after the date Ramirez signed it.  That, the court said, suggested the form could have been signed by Ramirez in Mexico and then returned to the United States for filing.

The issue before the district court, and now us, is whether the I-130 Form and any other relevant evidence was sufficient to require a finding that

"immigration authorities . . . specifically discovered and noted the alien's physical presence . . . ." *Compian-Torres*, 712 F.3d at 207.   There is a second requirement for proving that an alien has been "found" in this country, namely, that authorities at least should have known that such presence was illegal.  *Id.* We are not concerned with that second factor.   "We review the district court's fact findings in relation to the statute of limitations for clear error and its legal conclusions *de novo*."  *Gunera*, 479 F.3d at 376.

Whether authorities "discovered and noted" Ramirez's presence is fundamentally a fact question that requires a district court to decide whether the evidence and reasonable inferences support a particular finding.  There is no evidence that authorities "noted" Ramirez's presence, *i.e.*, that they actually observed it "carefully or with particularity," or "put [it] down in writing."  *See Note*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Whether they "discovered" it requires consideration of the conflicting information on the form.  The specific questions in the I-130 Form that were to be answered only if Ramirez was physically present in the United States were left blank, supporting the inference that Ramirez was not present.  The form indicated a present Texas address, but that address was the same as the petitioning spouse.  Reading the two parts of the form together, it would not have been improper for immigration authorities to assume that the information provided exemplified errors typically made on these forms, such as disclosing a planned future address upon admission or having the alien relative sign as the petitioner.  Thus, the district court did not clearly err in finding immigration authorities had neither discovered nor noted Ramirez's physical presence in 2003.

We are not ruling categorically that an I-130 Form can never create the basis for actual knowledge of physical presence.  We are only affirming a finding in this case that the document did not put officials on notice.

AFFIRMED.