# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40542

UNITED STATES OF AMERICA,

> Plaintiff–Appellee,

v.

JAIME LUIS ESTRADA-MONZON,

> Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2017

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 5:14-CR-629-1

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.

PER CURIAM:*

Jaime Luis Estrada-Monzon appeals his conviction for illegal reentry, arguing that the district court abused its discretion by failing to give the jury a duress instruction and allowing the Government to elicit prejudicial evidence during its cross-examination of Estrada-Monzon. We AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-40542

## I. BACKGROUND

On June 23, 2014, Border Patrol Agent Francisco Ponce de Leon was patrolling ranch lands south of Laredo, Texas, within five miles of the border. During his shift, Ponce de Leon discovered fresh shoe tracks crossing Highway 83. He followed the tracks in his marked vehicle until they disappeared into an area with thick brush, leading him to conclude that the individuals he was following were in the brush or had changed direction. He notified two other agents, Alex Guerra and Oscar Rodriguez, to help search for undocumented immigrants. Ponce de Leon also requested assistance from a helicopter unit. The agents eventually found four individuals, each lying on the ground and trying to hide underneath grass and branches. One of these individuals was Estrada-Monzon.

The four individuals were cooperative; moreover, none made an "outcry" or asked for assistance from the agents. After they were apprehended, Officer Guerra asked them for basic biographical information. Estrada-Monzon informed Guerra that he was from Guatemala and was born on August 28, 1965. The individuals were then transported to the Laredo South Station, where Estrada-Monzon was interviewed by Agent David Lozano. Lozano testified that his interviews typically take between one and two hours, during which he reads the interviewee his *Miranda* rights, determines whether the interviewee will provide information voluntarily, obtains biographical information, and attempts to ascertain why the interviewee left his country. During his interview with Estrada-Monzon, Lozano confirmed that Estrada-Monzon was a noncitizen. Estrada-Monzon answered "no" when asked whether he feared "persecution or torture" if he was removed from the United States. Estrada-Monzon informed Lozano that he had entered the country by crossing the Rio Grande, but provided no more information regarding his entry when asked if there was anything else he would like to tell Lozano.

No. 16-40542

Estrada-Monzon was charged by a grand jury with illegal reentry pursuant to 8 U.S.C. § 1326. At trial, Estrada-Monzon testified in his own defense as follows. He has lived in Dalton, Georgia, since 1989, is married, and has two adult children. He was last deported to Guatemala in February 2014. Prior to his reentry in June 2014, Estrada-Monzon had lived in Guatemala but could not find work. He traveled to Reynosa, Mexico, where he was hoping to open a body shop; he also hoped for his wife to move to McAllen, Texas, where they could be close to their children.

Upon his arrival in Reynosa, Estrada-Monzon was kidnapped by a group of armed men who wanted to know whether he was going to the United States and whether he had any relatives there. He was placed in a Jeep Cherokee with a black bag over his head, driven to some location about fifteen minutes away, and deposited in a windowless room with six other people who had also been kidnapped. During his captivity, Estrada-Monzon was repeatedly asked for the phone numbers of his relatives, which he did not reveal. After about nine days, "[t]he marines showed up," broke down the door to the house, and told the captives they could return to their countries on their own.  Once he escaped, however, Estrada-Monzon was recaptured. He was taken to a new location—this time with over one hundred other people—where he was held for a total of thirty-nine days. After several beatings, Estrada-Monzon gave his captors the phone numbers of his family members. His captors demanded $10,000 for his release.

Eventually, Estrada-Monzon was told he would be taken to Monterrey, Mexico. He was driven in the bed of a pickup truck with several others to a warehouse. From there, he was brought to the edge of the Rio Grande, where there were men with walkie talkies, weapons, and backpacks. Estrada-Monzon protested, telling these men that he did not want to go to the United States and had been told he was going to Monterrey. Despite his protestations,

3

No. 16-40542

Estrada-Monzon was made to cross the river with ten other people, carrying backpacks, some of which Estrada-Monzon believed contained drugs. He felt threatened because three of the men were carrying guns, and also believed it would be dangerous to try to escape into the river. After crossing the border, the captives were ordered to lay on their stomachs for six hours and then walk all night. When they reached Highway 83, they "threw the backpacks to the side" and crossed the highway. After walking a few more hours, the three armed men guiding the group made the captives hide in the brush. The armed men were picked up in a truck, leaving the captives behind. Estrada-Monzon fell asleep while hiding; when he woke up, he saw Agent Ponce de Leon and heard him asking for a "chopper" and for assistance.

Estrada-Monzon stated that he continued to hide because he "became scared again, because this whole thing about being locked up came to mind," and he ran about twenty meters. When asked from whom he was hiding, Estrada-Monzon stated that supposedly "the persons . . . were close by, but, as you can see, I—I don't know." He further explained that he said nothing about his circumstances to either Ponce de Leon or Guerra because he was scared, weak, and dehydrated.

After Estrada-Monzon testified, the district court heard argument about whether or not to instruct the jury on duress. Ultimately, the court decided not to give a duress instruction. The district court instructed the jury as follows:

> For you to find the Defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First, that the Defendant was an alien at the time alleged in the Indictment;
>
> Second, that the Defendant had previously been deported, denied admission, excluded, or removed from the United States;

4

Third, that thereafter, the Defendant knowingly entered, attempted to enter, or was found in the United States;

And fourth, that the Defendant had not received the consent of the Secretary of the Department of Homeland Security to apply for readmission to the United States since the time of the Defendant's previous deportation.

The instruction also stated that "knowingly" "means that the act was done voluntarily or intentionally, not because of mistake or accident."

While deliberating, the jury sent the court a note stating that it was "having trouble w/ the 3rd stat. to prove a reasonable doubt." The note also asked: "if you are forced is that knowingly[?]" and "Do we go by all 3 or one of the 3[?]" The district court discussed how to resolve the jury's questions with the parties, and concluded that the jury was considering whether Estrada-Monzon had entered the country by force. The district court formulated additional instructions, noting that the jury would have an opportunity to indicate whether its questions had been answered. The jury was called back and instructed:

> You have been instructed that your verdict, whether it is guilty or not guilty, must be unanimous. The following instruction applies to the unanimity requirement as to Count One.
>
> Count One of the Indictment accuses the Defendant of committing the crime of Illegal Reentry After Deportation in three different ways. The first is that the Defendant knowingly entered the United States; the second is that the Defendant knowingly attempted to enter the United States; the third is that the Defendant was knowingly found in the United States.
>
> The government does not have to prove all of these for you to return a guilty verdict on this charge.
>
> Proof beyond a reasonable doubt on one is enough. But in order to return a guilty verdict, all of you must agree that the same one has been proved. All of you must agree that the government proved beyond a reasonable doubt that the Defendant knowingly entered the United States, or all of you must agree that the

government proved beyond a reasonable doubt that the Defendant knowingly attempted to enter the United States, or all of you must agree . . . that the government proved beyond a reasonable doubt that the Defendant was knowingly found in the United States.

The term "knowingly," for purposes of the third element, requires proof of knowledge of the facts that constitutes [sic] the offense. In other words, did the Defendant know that he was reentering the United States without permission[?][1]

The jurors confirmed that this instruction answered their question. Estrada-Monzon was convicted, and sentenced to 51 months' imprisonment. He timely appealed.

## II. DISCUSSION

### A.    Duress Instruction

Estrada-Monzon first argues that the district court erred by not instructing the jury that duress was a defense to the offense for which he had been charged. We review the denial of a requested jury instruction for abuse of discretion, giving the district court "substantial latitude in formulating its instructions." *United States v. Storm*, 36 F.3d 1289, 1294 (5th Cir. 1994). "Because duress is an affirmative defense, a defendant must present evidence of each of the elements of the defense before it may be presented to the jury." *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). Duress requires proof that the defendant (1) was under "an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury"; (2) had not "recklessly or

---

[1] The district court expressed some concern that the clarification of "knowingly" would be confusing in light of the prior instruction that "knowingly" means "voluntarily or intentionally," but believed the instruction to be correct in light of our case law stating that illegal reentry is a general intent crime. *See United States v. Morales-Palacios*, 369 F.3d 442 (5th Cir. 2004). The district court was hopeful that this Court might elucidate whether the instruction correctly stated the mens rea for being "knowingly found" in the United States. However, Estrada-Monzon does not challenge the given instruction on appeal, so we do not address this issue.

negligently placed himself in a situation" where he would likely "be forced to choose the criminal conduct"; (3) had no "reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm"; and (4) could reasonably anticipate a "direct causal relationship . . . between the criminal action taken and the avoidance of the threatened harm." *Id.* at 873 (internal quotation marks, alterations, and citation omitted). The defendant must prove each element by a preponderance of the evidence. *United States v. Willis*, 38 F.3d 170, 179 (5th Cir. 1994). Estrada-Monzon does not make specific arguments with regard to each element; rather, he generally argues he was entitled to the instruction because he made a prima facie showing of duress.

We find that the district court did not abuse its discretion because Estrada-Monzon failed to produce sufficient evidence on the third element— that he had no reasonable legal alternative to violating the law. "To establish the absence of a legal alternative a defendant must show 'that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative.'" *Posada-Rios*, 158 F.3d at 874 (quoting *United States v. Harper*, 802 F.2d 115, 118 (5th Cir. 1986)). As we have noted consistently, the opportunity to report threats or seek the aid of law enforcement constitutes a reasonable alternative to committing the crime. *See, e.g.*, *United States v. Ramirez-Chavez*, 596 F. App'x 290, 294 (5th Cir. 2015) (per curiam); *United States v. Gatti*, 434 F. App'x 364, 364–65 (5th Cir. 2011) (per curiam); *United States v. Lee*, 208 F. App'x 352, 354–55 (5th Cir. 2006) (per curiam); *United States v. Thompson*, 77 F. App'x 227, 232 (5th Cir. 2003) (per curiam); *Posada-Rios*, 158 F.3d at 875; *Harper*, 802 F.2d at 118; *United States v. Gant*, 691 F.2d 1159, 1164 (5th Cir. 1982).

Estrada-Monzon did not put forth sufficient evidence that he actually tried to seek assistance, that he had no time to so, or that his history revealed

7

an attempt would be illusory. *See Posada-Rios*, 158 F.3d at 874. As an initial matter, Estrada-Monzon was convicted under 8 U.S.C. § 1326 for illegal reentry, which criminalizes entering, attempting to enter, or being found in the United States illegally. 8 U.S.C. § 1326(c); *accord United States v. Ramirez-Salazar*, 819 F.3d 256, 257 (5th Cir. 2016). Therefore, illegal reentry is a continuing offense that "begins at the time the defendant illegally reenters the country and does not cease until the defendant is 'found' by immigration authorities in the United States." *Ramirez-Salazar*, 819 F.3d at 257. And a defendant is "found" only once his "physical presence is discovered and noted by the immigration authorities, and the knowledge of the illegality of his presence. . . can reasonably be attributed to the immigration authorities." *Id.* at 258 (quoting *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996)). Thus, Estrada-Monzon was in violation of § 1326 until he was discovered by the Border Patrol agents and knowledge of the illegality of his presence could reasonably be attributed to them. Accordingly, the question is whether Estrada-Monzon had any reasonable alternative to illegal reentry not only when he actually crossed the border but also once he was in the United States.

Estrada-Monzon testified that he was left by his captors and fell asleep. When he woke up, he saw and heard Agent Ponce de Leon "walking" and "using his phone." Estrada-Monzon understood that the agent was "asking for help" and "asking for a chopper." Estrada-Monzon did not avail himself of the opportunity to seek assistance. Estrada-Monzon did not call out for help or approach the agent; instead, he became afraid and ran about twenty meters. Instead of running, Estrada-Monzon could have called out for aid. Upon being found and interviewed, Estrada-Monzon could have, at a minimum, reported the threats or explained the circumstances of his reentry into the United States. Estrada-Monzon may have been subjected to weeks of threats and may

have crossed the border against his will; nonetheless, an opportunity to seek help arose when he encountered the agents—an opportunity that constituted a reasonable alternative to the continuing crime of illegal reentry.

Estrada-Monzon argues that he was not thinking clearly when he was found by Border Patrol. He contends that someone with his experience would "have difficulty trusting all questionable situations and persons." However, "the duress defense requires an objective inquiry into whether a defendant's conduct, although illegal, represented [his] only reasonable alternative to serious bodily injury or death." *United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005); *accord United States v. Zayac*, 765 F.3d 112, 121 n.2 (2d Cir. 2014) ("Nor do we ordinarily consider whether the defendant's fear might have rendered him or her incapable of appreciating the existence of an objectively reasonable [alternative].").  Estrada-Monzon's testimony that he "wasn't thinking clearly" at the time was not enough to establish that he either attempted or had no time to seek assistance from the Border Patrol agents. Although Estrada-Monzon may have been afraid of being found and detained, duress is a defense only if the defendant's only options were to commit the crime or risk serious injury or death. *See Dixon*, 413 F.3d at 523. Estrada-Monzon faced that type of threat from his captors, not the Border Patrol agents. Accordingly, we find the district court's decision not to instruct the jury on duress was not an abuse of discretion.

## B.   Admissibility of Estrada's Testimony

Estrada-Monzon next argues that the testimony elicited on cross-examination regarding his prior illegal reentries was cumulative and prejudicial. At trial, a Homeland Security United States Citizenship and Immigration Services ("USCIS") officer testified about Estrada-Monzon's

record of reentries into the United States.[2] On cross-examination, Estrada-Monzon was asked about this prior history. Estrada-Monzon did not object to the admissibility of testimony about prior reentries. Consequently, we review his challenge for plain error. *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013). "To demonstrate plain error, the defendant must show that there was error, it was plain, and it affected his or her substantial rights." *Id.* And "[e]ven if the defendant can meet this burden," we will only reverse if "the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (citation omitted).

We find that the district court did not err in admitting the testimony. Under Federal Rule of Evidence 404(b), evidence of prior crimes may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To be admissible, the evidence must be "relevant to an issue other than the defendant's character" and must have "probative value that is not substantially outweighed by its undue prejudice" under Federal Rule of Evidence 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc). Here, Estrada-Monzon's prior immigration history was relevant to show his intent to knowingly return to the United States, given that he had returned several times after being deported. It was also relevant to show that he had no legal right to be in the United States. Furthermore, although the cross-examination testimony elicited was somewhat cumulative of the USCIS officer's testimony, Estrada-Monzon added certain factual details. He briefly described his prior interactions with immigration officials and Border Patrol agents, and how he had crossed the

---

[2] Estrada-Monzon's file reflected that he was removed or deported in November 1996; he was found and ordered deported again in October 2007; a prior order of deportation or removal was reinstated in August 2010; and he was removed for the last time in February 2014.

border on prior occasions by walking. He also testified that he sought asylum in 1999. In addition to being probative of Estrada-Monzon's intent to knowingly return to the United States, his testimony was relevant to the duress issue. For example, Estrada-Monzon's prior history indicated that he would have recognized uniformed Border Patrol agents as law enforcement officials from whom he could seek aid.

Upon reviewing the trial testimony, we cannot say it was plain error for the district judge to find that the probative value of this testimony was not substantially outweighed by undue prejudice to Estrada-Monzon. *See Beechum*, 582 F.2d at 911. Any unfair prejudice was also minimized by the district court's instruction that Estrada-Monzon was "not on trial for any act, conduct, or offense not alleged in the Indictment." *See United States v. McMahon*, 592 F.2d 871, 873 (5th Cir. 1979). The district court thus did not err in admitting evidence of Estrada-Monzon's prior reentries.

Additionally, Estrada-Monzon does not address the third and fourth plain error prongs in his brief. Thus, he has not shown that the district court plainly erred. *See United States v. Winner*, 670 F. App'x 337, 338 (5th Cir. 2016) (per curiam) ("[B]y failing to address the third and fourth prongs of the plain-error standard, he waived this contention.").

## III. CONCLUSION

For the foregoing reasons, Estrada-Monzon's conviction is AFFIRMED.

11